MARY E. BAUMGARTNER, Administratrix of FRED-
ERICK C. BAUMGARTNER, and ELIZABETH GUNTHER,
Administratrix of HENRY GUNTHER *vs.* JACOB HAAS.

*Executor de son tort—Good faith—Penalty.*

One who takes possession of the property of a deceased person with-
out being entitled thereto, but in good faith, and believing he has
a legal right to do so, will not be deemed an executor *de son tort*, if
there be colorable ground for his claim, and good faith in its
assertion.

B. in his life-time executed several bill of sale, absolute on their face,
to G. his father-in-law. These bills of sale, among other things in-
cluded fifty cows, which were in the possession of B. at the time of
his death. Immediately upon the death of B. these cows were taken
possession of by G. who continued the milk business in which B.
was engaged at the time of his death. The widow of B. took out
letters of administration upon his estate, and returned a small in-
ventory, not including any of the cows. Within ten days after the
death of B. a bill was filed by H. one of his creditors, against G.
attacking the bill of sale of latest date, and claiming that the
property should go into the hands of the administratrix. G. in his
answer to the bill, did not state explicitly whether he claimed the
property absolutely, or only claimed a lien thereon for his debt.
But when examined as a witness afterwards, he admitted that the
bills of sale were taken as security only. It also appeared that as
soon as he took possession of the property, exclusive of what was
contained in the inventory, he took measures to prevent the other
creditors of B. either from seeing the cattle, or knowing the amount
of milk that he was selling. HELD :

That G. should be treated as an executor *de son tort* and required to
account as such.

An executor *de son tort* sued at law as such by a creditor of the de-
ceased, is not allowed to retain for his own debt; and this rule of
the common law, based upon sound public policy, cannot be con-
sidered a penalty, and will be followed in equity.

APPEAL from the Circuit Court of Baltimore City.

This suit was brought by the appellee against Mary E. Baumgartner, administràtrix of Frederick C. Baumgartner, deceased, and Henry Gunther. Pending the suit, Henry Gunther died, and Elizabeth Gunther, his widow, was appointed his administratrix, and as such was made a party defendant to the suit. This appeal was taken from an order of the Court below, overruling exceptions to certain accounts of the Auditor and finally ratifying said accounts. The accounts so ratified were stated on the theory that Gunther in taking possession of the property of the deceased and selling the same, and in undertaking upon his own responsibility to continue the milk business which the deceased had carried on, was acting as executor *de son tort*, and should be charged as such. The case is further stated in the opinion of this Court.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, ROBINSON, and BRYAN, J.

*Randolph Barton*, and *Charles Marshall*, for the appellants.

*James W. Denny*, and *Henry F. Garey*, for the appellee.

STONE, J., delivered the opinion of the Court.

The principal question in this case is whether Gunther, one of the defendants, shall be held liable as executor *de son tort*. The facts necessary for us to notice are these:

A certain Frederick C. Baumgartner, now deceased, in his life-time executed several bills of sale, absolute on their face, to the defendant, Henry Gunther, who was his father-in-law. These bills of sale, among other things, included fifty cows, which were in the possession of Frederick C. Baumgartner at the time of his death.

Immediately upon the death of Frederick C. Baumgartner, Gunther took possession of these cows and continued to carry on the milk business which his son-in-law, Frederick, was engaged in at the time of his death. Letters of administration were soon after the death of Frederick granted to his widow Mary, and she returned a small inventory not including any of the fifty cows.

Within ten days after the death of Frederick C. Baumgartner, the complainant Haas, one of his creditors, filed a bill against Henry Gunther for the purpose of setting aside the aforementioned bills of sale, as fraudulent and void against him, the complainant, as a creditor of Frederick, and for general relief, and also made the administratrix, Mary, a defendant. Answers were duly filed and testimony was taken, and the Court decided that while there was not sufficient proof to countervail the presumption of the *bona fides* of the consideration of the bills of sale, the description of the cows was not sufficient to pass any title to them under the bills of sale, and decreed that Gunther should account for them, and from this decree there was no appeal. In the subsequent proceedings in the case Gunther was treated as an executor *de son·tort*, and his debt postponed to the debts of other creditors, and from this, and the valuation of the cows this appeal was taken.

It has been strenuously argued in behalf of Gunther, that he should not be held liable as an executor *de son tort* because he took possession of these cows under color of title, and that he believed he had the legal right to do so. There are cases to be found where a party has not been held executor *de son tort* where he *in good faith*, and believing he had the title took possession of property, and to which it was afterwards shown that he had not a perfect legal title. The leading case on this subject seems to be the case of *Femings vs. Jarrat*, 1 *Espinasse*, 335. In that case there was a *bona fide* sale of the ship to the defendant, but the bill of sale was defectively executed, and

the Court held that under such circumstances the defendant should not be held liable as executor *de son tort.* This decision has been followed in several of the States. But in every case to which we have been referred the element of good faith will be found. We by no means intend to assert the extreme proposition that he who takes possession of the goods of the deceased *in good faith,* and believing he has a good title to them, will be held in all cases as executor *de son tort.* But there must be at least colorable ground for his claim, and good faith in its assertion. Is this the case with Gunther?

Within ten days after the death of Frederick C. Baumgartner, the complainant filed a bill against Gunther, attacking this bill of sale and claiming that the property should go into the hands of the administratrix. It is true enough that the bill of complaint alleged a want of consideration for the bill of sale, but it also prayed that it might be declared void as against him, and also prayed that Gunther should account to him, and for general relief. This was notice to Gunther that his right to the property was disputed. An opportunity was then afforded Gunther to state fully and frankly his position and claim to this property. The bills of sale were taken either as a security for a debt or as an absolute conveyance, and it was incumbent on him to state his claim truly. But his answer on that point is evasive. He does not state explicity in his answer to the bill of complaint whether he claimed the property absolutely, or only a lien on it for his debt. But when examined as a witness afterwards he admits that the bills of sale were taken *as security* only. Apart from his own evidence there are other facts in the case which would clearly prove the same thing. If then being only in reality a mortgagee, and knowing himself to be such, he took possession of nearly the whole property of the deceased, a pertinent enquiry at once arises, what was his motive in so doing? These motives are shown, we think,

by his subsequent conduct and his treatment of the property. He, Gunther, kept a feed store and he continued to feed the cows out of it, and to run the milk business until his account against the property, according to his own showing, stood profits from the sale of milk, $1500; expenses for feed, &c., $2900, and then he sold the cows. The difference he evidently expected to be paid out of the sale of the property. As soon as he took possession of this property he took measures to prevent the other creditors either from seeing the cattle, or knowing the amount of milk that he was selling.

These and other circumstances that might be mentioned are utterly irreconcilable with the theory of an honest mistake, which might relieve him from the liability of an executor *de son tort*. His daughter administered but he seems to have managed the administration, and after causing an inventory of something over one hundred dollars in value, he took possession of all the rest with the result that we have shown. If under the circumstances we have detailed, the defendant is not to be treated as an executor *de son tort*, how is he to be regarded? He held and used the property of the deceased, without the right to do so, and it is difficult to see how he can be called to account for it except as executor *de son tort*, there being at the time a rightful executor.

In *Bentley vs. Cowman*, 6 *Gill & J.*, 152, the Court distinctly recognize the right to hold a party accountable *in equity* as executor *de son tort*. In that case a creditor filed a bill for the sale of the real estate of a deceased debtor, upon the ground that his personal estate was inadequate to pay his debts, and what there was of it had been expended by his heirs without any administration. No account of the personal estate was asked for, and no charge made that the heirs were executors *de son tort*, but the sale of the realty was asked, and there was the usual prayer for general relief, and Judge DORSEY in the opinion of

the Court says : " But conceding it (a disclaimer by way of plea) to be an unexceptionable disclaimer as to the land, and a bar to all relief sought in relation thereto, it would not warrant the decree dismissing the complainant's bill, the allegations in which, not only present a claim against the defendants in respect of the realty of the deceased, but also as executors *de so ntort* of the personalty. And although there is no formal prayer for an account in the bill, yet the facts authorizing it are sufficiently charged, and the prayer for general relief entitled the complainants to such an account." This case very clearly recognizes the right to call an executor *de son tort* to an account in a Court of equity, as well as by suit at law. In many cases he can be effectually reached only in equity.

In the case at bar, there is both a prayer for an account and for general relief, and the defendant, Gunther, can clearly be held to account as such executor *de son tort*.

Now an executor *de son tort* sued at law as such by a creditor of the deceased, is not allowed to retain for his own debt. The current of authorities is uniform on this point, and it is enough for us to refer to the case of *Glenn vs. Smith*, 2 *Gill & J.*, 493, where the law is definitely settled in this State.

It is true that that case as all the others within our notice were cases at law, and it has been very strenuously argued that a different rule should prevail in equity. It is insisted that, in refusing to allow Gunther to retain any portion of the property in controversy in payment of his own debt, a Court of equity would be enforcing a penalty upon him, which a Court of equity will never do.

The rule of the common law, which refuses to allow executors *de son tort* to retain for their own debts until the other creditors are paid, is based upon sound public policy. To allow it (2 *Black. Com.*, 511,) would tend to encourage creditors to strive who should first take possession of the goods of the deceased, and would allow a creditor to take

advantage of his own wrongful act by paying himself first.
Such is unquestionably the rule of the common law from
time immemorial.    Can a Court of equity annul this rule?
A quotation from an eminent American writer (Story) will
answer this question: "For example, (1 *Story's Equity
Juris.*, sec. 11,) the first proposition that equity will re-
lieve against a general rule of law, is neither sanctioned by
principle nor by authority.    For though it may be true
that equity has in many cases decided differently from
Courts of law, yet it will be found that these cases involved
circumstances to which a Court of law could not advert,
but which, in point of substantial justice, were deserving of
particular consideration, and which a Court of equity pro-
ceeding on principles of substantial justice, felt itself bound
to respect."

This is a bill in equity, and it has been argued that
when the decree was passed against Gunther requiring
him to account for this property, and bring it into Court
for distribution among the creditors of the deceased, that
Gunther being a creditor should participate in the distri-
bution.

If the creditor Haas had brought suit at law and recov-
ered, the defendant could not certainly have retained any
thing for his own debt.    The plaintiff if his debt amounted
to the whole value of the property would have taken it
all.    This is unquestionably the rule at law.    Should an
honest and meritorious creditor of the deceased be placed
in a worse position, when he seeks the aid of a Court of
equity?    Or should a manifest wrong-doer fare better in
equity than at law?    We think the answer to these pro-
positions must be in the negative.

To allow the defendant to come in and participate in the
division of the property recovered from him, is practically
to allow him to retain a share of it for his own debt, and
thus relieve him from the operation of the rule of the com-
mon law, that forbids such a retainer.

The general proposition is laid down in the elementary writers upon the powers of a Court of equity, (See *Black. Com.* and *Story's Eq. Juris.*,) that equity cannot relieve against a rule of the common law however harshly it may operate. A long list of cases where these rules do operate harshly and rigorously, but which equity is powerless to relieve against, is given by the writers.

If we admit that there may be exceptions to this general rule, they must be in cases where there are circumstances to which a Court of law cannot advert, and reach through its procedure, and which are necessary for a Court of equity to notice in order to reach substantial justice.

But the case at bar does not come within these exceptions, (if such exist) and the conduct of the defendant has not been such that substantial justice would require any abatement of the rigor of the rule.

But it has been further argued that a Court of equity while it may relieve against, yet will never aid in the enforcement of, a *penalty;* and that the postponement of the debt of the defendant to the claims of the other creditors is a *penalty* upon him, and therefore a Court of equity will not enforce it. There is no doubt of this law. It is laid down in the text writers and fully sanctioned in *Cross vs. McClenahan,* 54 *Md.,* 21.

But this law applies to cases where the aid of a Court of equity is sought to enforce a penalty. Now this is not a suit to enforce a penalty, but simply a suit by a creditor to recover a just debt. Penalties in civil matters are imposed by statute or by agreement of parties, principally the latter.

The case of *Cross vs. McClenahan,* above mentioned is an example of the former, and the case of *McKim & Kennedy vs. Mason,* 3 *Md. Ch. Dec.,* 186, an example of the latter.

But a rule of the common law regulating the order in which an executor *de son tort,* or wrongful executor, shall

pay away the assets in his hands (for the rule amounts to that) never was and never can be considered a penalty. He is required to pay all other creditors before he pays himself. If there is nothing left after the payment of the others he gets nothing.

So a rightful executor is required by our statute to pay judgments before bond debts, and if he holds a bond of the deceased, and the judgments take the whole estate he gets nothing. It may as well be said that our statute imposes a penalty upon bondholders, by postponing their claims to those of judgment creditors, as that the rule of the common law, which postpones the debt of a wrongful executor (as far as the assets in his hands are affected) to all other creditors, imposes a penalty on him. We are therefore of opinion that the defendant, Gunther, is properly chargeable as executor *de son tort,* and that the report of the auditor and order of the Court thereon excluding him from participation in the assets in his hands, is correct, and must be affirmed.

As to the other question presented, we think the valuation of the property made by the auditor fully warranted by the testimony, and the order must be affirmed with costs.

*Order affirmed.*

(Decided 9th December, 1887.)

ROBINSON, J., dissented.