BEALL, *et al.* Lessee *vs.* HARWOOD.

APPEAL from the General Court. Ejectment for a tract of land called *Buzzard Island,* lying in *Calvert* county.

In the construction of an act of assembly, the intention of the legislature is to prevail, and is to be collected from the whole of the law, and the circumstances which produced it

Where lands had been devised by A to his son B, intail male, remainder intail male to his eldest son C, remainder intail male to his third son D, remainder in fee to his two daughters E and F, as tenants in common—B by his petition to the legislature stated, that he had only *female heirs, (viz,* two daughters, L and M) who could not inherit the lands after his death, whereby it would descend to his eldest brother C, (who united in the petition;) he therefore prayed that an act might pass to vest an estate of inheritance in fee simple in the said lands, in his female heirs, in case he should have no male heirs at the time of his death; and in default of issue of his said female heirs, the said lands to descend according to the will of his father Which prayer being thought reasonable, the legislature by an act, reciting the facts and the prayer set forth in the petition, vested the said lar b in the said female heirs of B, their heirs and assigns, with a proviso, that if B should have any male heirs of his body at the time of his death, or that the said female heirs of B should not have issue, then the lands should descend and stand limited as by the will of A was devised. Afterwards B had a son born named G, who died in the life-time of B, leaving three daughters, H, J and K. During the life of G, (in 1791,) the lands were conveyed to him in fee by B, of which he died seized, leaving the said three daughters B afterwards died, leaving issue his said two daughters L and M, who entered, &c. They are both since dead, M having survived L, leaving a daughter N, married to the defendant. On an ejectment brought in the name of the lessee of H, J and K, the three daughters of G—Held, that *female heirs* in the act of assembly, meant the two daughters of B, and that an estate in fee simple vested in them, to be defeated and divested out of them on the happening of either of two contingencies, 1st If B left issue male at the time of his death; and 2d If B should die without leaving issue male at the time of his death, and his two daughters should die without leaving issue; and that the plaintiff was not entitled to recover

A mortgagor cannot support an ejectment for the land mortgaged, unless he can show that the mortgage had been satisfied previous to the bringing the ejectment

The defendant, (the present appellee,) took *general defence,* and issue was joined on the plea of *non cul.* .t. The plaintiff at the trial, (May term 1804,) gave in evidence a grant dated the 25th of March 1652, to *William Stone,* for the land for which the ejectment was brought. Also that *Stone,* the grantee, on the 13th of November 1717, conveyed the land in fee simple to *Leonard Hollyday,* (the first.) That *Hollyday,* on the 7th of November 1739, by his last will and testament, devised the land in question, *First.* To his son *Leonard,* (the second,) intail male. *Secondly.* Remainder intail male to his eldest son *Thomas.* *Thirdly.* Remainder intail male to his third son *Clement;* and *Fourthly.* Remainder in fee to his two daughters *Elizabeth* and *Mary,* as tenants in common. That *Leonard Hollyday,* (the first,) died on the 10th of December 1739, seized of the land, leaving three sons and two daughters, to wit, *Thomas,* his eldest son, *Leonard,* (the second,) his second son, *Clement,* his third son, and *Elizabeth* and *Mary,* his daughters. That *Leonard Hollyday,* (the second,) entered upon the land by virtue of the devise, and was seized thereof *prout lex postulat;* and being so seized, and having only two female children, a petition was presented to the general assembly of the province of *Maryland,* at February session 1756, and in consequence of that petition an act of assembly was enacted during the same session, (ch. 17,) entitled, "*An act to vest certain intailed lands therein mentioned in the female heirs of Leonard Hollyday, gentleman, in fee simple;*" reciting, that "Whereas *Thomas Hollyday* and *Leonard Hollyday,* gentlemen, by their humble petition to this general assembly, did set forth that their father, *Leonard Hollyday,* of *Prince-George's* county, gent. in the year 1741, died seized of two tracts of land lying in *Calvert* county, the one called *Buzzard Island,* and the other called *The Addition to Buzzard Island,* the whole containing 751 acres, and that by his last will and testament he devised the same to his second son *Leonard Hollyday,* one of the petitioners, and to his male heirs, and for want of such issue to his eldest son *Thomas Hollyday* and his male heirs; that *Leonard Hollyday* had only female heirs, who could not inherit the said land after his death, whereby it would descend to his eldest brother *Thomas,* who by letter had signified his consent, and is party to the said petition; that the said land was unim-

proved at the time of the death of their father, since which it had cost the present possessor, *Leonard Hollyday*, who lives thereon, a considerable sum of money to improve the same; that the said land had been in the possession of the father of the petitioners ever since the year 1685, and never been claimed by any other person; wherefore they prayed that an act of assembly might pass to vest an estate of inheritance in fee simple in the said land called *Buzzard Island* and *The Addition to Buzzard Island*, in the female heirs of the said *Leonard Hollyday*, in case he should have no male heirs at the time of his death, and that in default of issue in the said female heirs, the said land to descend according to the will of the father of the petitioners; and the prayer of the petitioners, in the said petition contained being thought reasonable, the same was granted, and leave given to bring in a bill according to the petitioners prayer;" and it was accordingly enacted, "that the said tract of land called *Buzzard Island* and *The Addition to Buzzard Island*, containing in the whole 751 acres, with the appurtenances, in *Calvert* county aforesaid, so as aforesaid devised by the said *Leonard Hollyday*, the father, to his second son *Leonard Hollyday*, and his male heirs, shall be and the same are hereby vested in the said female heirs of *Leonard Hollyday*, the son, their heirs and assigns, to the only use and behoof of them the said female heirs of the said *Leonard Hollyday*, the son, their heirs and assigns, for ever; *Provided always*, and it is the true intent and meaning of this act, that if the said *Leonard Hollyday* shall have any male heirs of his body at the time of his death, or that the said female heirs of the said *Leonard Hollyday* shall not have issue, that then and in such case the said land called *Buzzard Island* and *The Addition to Buzzard Island*, with the appurtenances, shall descend and stand limited as by the last will and testament of the said *Leonard Hollyday*, the testator, is devised, any law, usage or custom, to the contrary in any wise notwithstanding; *saving* to the King's most excellent majesty, his heirs and successors, to the right honourable the Lord Proprietary, his heirs and successors, and to all and every other person and persons not mentioned in this act, bodies politick and corporate, their respective heirs and successors, all such right, title, estate, interest, claim and demand, othe than the persons claiming under the last will of the said

*Leonard Hollyday,* the father, and this act, as they, every or any of them, could or might claim if this act had never been made." Afterwards *Leonard,* (the second) had a son, *Leonard,* (the third,) who died in the life-time of his father, leaving three daughters, the lessors of the plaintiff. *Leonard,* (the second) on the 1st of February 1791, in the life-time of his son *Leonard,* (the third,) by a deed of bargain and sale duly executed, acknowledged and recorded, for a valuable consideration, bargained and sold the said tracts of land, and all his right and interest therein, to his son *Leonard,* (the third,) in fee: *Leonard,* (the third,) in virtue of that deed entered upon the lands, and was seized thereof *prout lex postulat;* and being so seized, died some time in the year 1793, leaving three daughters, *Elizabeth, Grace Contee,* (wife of *Aquila Beall*) and *Margaret Terrett,* the lessors of the plaintiff, his only children and heirs. *Leonard,* (the second,) died in or about the year 1794, leaving issue two daughters. The defendant then gave in evidence, that *Leonard,* (the second,) before and at the time of his petition to the general assembly in 1756, and at the time of the passage of the law, herein before inserted, had issue two infant daughters, *Sarah,* born in 1754, afterwards married to *Thomas Johns,* and *Anne,* born in 1755, afterwards married to *Walter B. Cox;* that in the year 1757, *Leonard,* (the second,) had a son, *Leonard,* (the third,) who afterwards died in 1793, without issue male, leaving his father and two sisters his survivors; and that the youngest of the sisters, *Anne,* was 15 years older than *Leonard,* (the third.) That *Leonard,* (the second,) died in 1794, and his two daughters, Mrs. *Johns* and Mrs. *Cox,* survived him. And afterwards Mrs. *Johns,* and her husband, died, and her sister, Mrs. *Cox,* and her husband, survived them; on the death of *Leonard,* (the second,) without issue male, *Walter B. Cox,* and *Anne* his wife, claiming under the said act of assembly, entered upon and were seized of the lands aforesaid in the declaration mentioned, until the death of *Cox;* that *Anne Cox* survived her husband, and died seized and in possession of said lands, leaving issue by *Walter B. Cox,* a daughter, her only child and heir, who married the defendant; and that the defendant, in virtue of his said marriage, on the death of *Anne,* the mother, entered on and was seized of the lands, and yet is in possession thereof. The plaintiff then

prayed the court to instruct the jury, that upon the afore-said evidence, if they believed the facts so offered in evidence to be true, the plaintiff was entitled to recover.

CHASE, Ch. J. In this case the counsel have said every thing which could be suggested upon the subject. They have made use of ingenious arguments. There can be no doubt but it has been fully and ably argued on both sides.

The court think, that the intention of the legislature is to prevail, and that intention is to be collected from the whole of the law, and the circumstances which produced it.

The case is to be considered, 1st. What was the intention of the legislature? 2d. Have they used clear words to express that intention? 3d. What is the effect of the enacting clause, and does it carry their intention into effect?

The motive does not satisfactorily appear; but facts do appear in the petition, as recited in the act, which are, that the land would, by the will, vest in *Thomas*; that *Leonard* had no son, but he had daughters who could not inherit; that he had improved the land, and had a solicitude to provide for his daughters. It is apparent to the court, that *Leonard* had little or no expectation of having any other children; he had in view to provide for the children he then had. *Thomas*, his brother, knowing of the improvements made on the land by *Leonard*, and actuated by motives of affection, concurred in the petition. It appears that the operation under the will was intended to be suspended. The petition sets forth, that *Leonard* had "only female heirs, who could not inherit." This was nothing more than a description of the persons who were to take under the law. The prayer of the petition was "to vest in the female heirs" of *Leonard Hollyday*, in fee simple. "Female heirs" meant the two daughters of *Leonard Hollyday*, and that the estate was to vest *immediately* in them. It appears that the petition had in view to provide for the two daughters. The legislature granted the petition. Has the enacting clause carried the intention into effect? "shall be and are hereby vested in the said female heirs." The intention must be to vest the estate in the daughters *then in being*. It is a plain designation of the persons who were to take; and that an estate in fee simple should be

vested in the two daughters, to be defeated only upon the happening of two contingencies. If the events, or either of them, had happened, the estate in fee simple would have divested, and let in the operation of the will. This shows, that by the act there was to be a suspension of the estate. It was the act of the father providing for his children, with a proviso in case of male heirs, or the death of his daughters without issue. *Thomas* made a greater sacrifice than *Leonard.*

What would be the effect if the construction contended for on the other side was to prevail? It would be putting it in the power of one party to defeat the provisions of the legislature. Such a construction could never be admitted. The children of *Leonard Hollyday,* (the third,) never could have inherited under the will.

The court are of opinion, that an estate in fee simple vested in the two daughters of *Leonard Hollyday,* which estate was to be defeated and divested out of the daughters, on the happening of either of two contingencies.

*First.* If *Leonard Hollyday,* (the second,) left issue male at the time of his death.

*Second.* If *Leonard Hollyday* should die without leaving issue male at the time of his death, and his two daughters should die without leaving issue.

On the happening of either of said events, the estate in fee simple, which was created in the two daughters, was to be divested, and the limitations in the will, which were suspended by the act of the legislature for the purpose of providing for his two daughters, were to be again put in operation. And the court are of opinion, that the plaintiff is not entitled to recover the land. The plaintiff excepted.

A mortgagor can-
not support an
ejectment for the
land mortgaged,
unless the mort-
gage debt has been
paid.

2. The defendant then read in evidence a deed of *mortgage* from *Leonard Hollyday,* (the third,) to *Benjamin Mackall,* bearing date the 2d of April 1791, for the tract of land called *Buzzard Island,* in the declaration mentioned, to secure the payment of £2179 14 1, current money, with interest, on the 1st of September 1794; and he prayed the opinion of the court, and their direction to the jury, that the plaintiff was not competent to recover by reason of the mortgage, unless he could show that the mort-

gage had been satisfied previous to the time of bringing this ejectment.

CHASE, Ch. J. The court are of opinion, that the mort-gage created a legal estate in the land in *Benjamin Mack-all,* the mortgagee, and his heirs; and that the plaintiff can-not recover unless he proves the mortgage was satisfied previous to the bringing this ejectment. The plaintiff ex-cepted, and the verdict and judgment being against him, he appealed to this court.

The cause was argued before TILGHMAN, BUCHANAN and NICHOLSON, J,

*Martin* and *Shaaff,* for the Appellant, in arguing on the *first* bill of exceptions, stated, that the question for discus-sion arose wholly out of the act of assembly of 1756, *ch.* 17, and three different constructions of that act they con-tended for in opposition to the opinion of the court below —1. That *Leonard,* (2d,) still continued tenant in tail, as before, with a limitation to his female heirs in case of his dying without issue male, with power of alienation, &c. and that his deed to *Leonard,* (3d,) of the 1st of February 1791, barred the estate tail, and vested a fee in the grantee. 2. Or, that the act gave the estate beyond the control of the tenant, to such persons as at the time of the death of *Leonard,* (2d,) answered the description of his heirs fe-male, as purchasers, including all those who, at his death in 1794, would have been his heirs female, viz. his two daughters, Mrs. *Johns* and Mrs. *Cox,* and also his grand-daughters, the children of *Leonard,* (3d.) 3. Or, that the act gave the estate beyond the control of the tenant to such persons, as, according to the meaning of the terms when the law passed in 1756, answered the description of heirs female of *Leonard,* (2d;) that is, females who were heirs also, viz. the daughters, the heirs of *Leonard,* (3d.) They cited *Shelley's* case, 1 *Coke,* 102, 103. *Shep. T.* 103. *Chew's Lessee vs. Weems,* 1 *Harr. & M'Hen.* 463 *(a.)*

*(a)* In *Chew's Lessee vs. Weems,* notwithstanding the decision of the Court of Appeals, a new ejectment was brought after the re-volution, in 1778, and the General Court, at *October* term 1782, gave the same judgment, which had been given by the Provincial Court, from which there was also an appeal by the plaintiff to the Court of Appeals; but that appeal was not acted on, the case hav-

1807.

Tolson
vs
Lanham

On the *second* bill of exceptions, they contended, that where the title to land is contested between the mortgagor and a stranger, the latter cannot set up the mortgage to defeat the recovery. They cited Pow. on Mort. 221, 222. The King vs. St. Michael's, Dougl. 632. Lade vs. Holford, 3 Burr. 1416. Doe vs. Bristow & Pegge, 1 T. R. 758, (note.)

*Key*, *Mason*, and *Johnson*, (Attorney General,) for the Appellee, on the *first* bill of exceptions, contended, 1. That the inheritance and estate was immediately vested in the daughters in fee by force of the clear words of the act, of assembly. 2. That if the estate did not immediately pass to the daughters, the inheritance in fee was vested in them, subject to a life estate in their father, and liable to be divested from them on the father's death, leaving a male heir then living. 3. That if the inheritance in fee was not vested in the daughters on the passage of the law, it was an executory grant to vest on a contingency to happen within a life in being, and like an executory devise not capable of being barred by deed or common recovery. They cited *Wheatley vs. Thomas*, 1 Lev. 75. *Walker vs. Collier*, Cro. Eliz. 379. Co. Litt. 27, a. *Prince's* case, 8 Coke, 1. *Murrey vs. Eyton & Price*, T. Raym. 355. Shep. T. 108, 109, 119. Pow. on Cont. 336, 337, 376, 377. Pow. on Dev. 376, 377.

On the *second* bill of exceptions, they cited *Doe vs. Wharton & Dixon*, 8 T. R. 2. *Doe vs. Staple*, 2 T. R. 696. *Armstrong vs. Peirse*, et al. 3 Burr. 1901.

THE COURT concurred in the opinions expressed by the General Court, in both of the bills of exceptions, and

JUDGMENT AFFIRMED.