C. HOWARD REEDER, TRUSTEE, ET AL. vs. WIL-
LIAM LANAHAN ET AL.

*Bill for Accounting—Limitations and Laches—Fraudulent Con-
cealment of Cause of Action—Stating Grounds of
Demurrer in Equity.*

In 1874, a bill in equity was filed to carry out under the direc-
tion of the Court the provisions of a deed of trust conveying
all of the grantor's property and for the sale and distribution
of the property among those entitled, after an accounting by
the trustee. The administrator of the deceased grantor and
all the persons in interest were made parties. A portion of
the property consisted of the interest of the grantor in a
business which had been carried on by him and the trustee
as partners. Under the decree then passed, a settlement and
distribution of the property was made. In 1908, after the
deaths of the trustee and of the administrator of the grantor,
the bill in this case was filed, alleging that in the former case
the trustee had failed to account for all of the property of
the firm, especially certain trade-marks and good will. The
bill prayed that the administrators of the former trustee and
partner be compelled to account for the property received by
him as trustee and the good will, trade-marks and profits of
the business of the partnership. Upon demurrer, *held,* that
laches and limitations are a bar to this suit, brought after the
lapse of more than thirty years since the accounting and set-
tlement, in which all the parties in interest were duly repre-
sented, and after the death of all the persons who were well
acquainted with the facts.

*Held,* further, that it does not appear from the allegations of
the bill and the exhibits, that any property was fraudulently
omitted from the settlement had in the former case; that the
value of the trade-marks now is not evidence of what their
value then was, and that the demurrer should also be sus-

tained because the bill does not state a case calling for the interposition of a· Court of Equity.

When a cause of action has been concealed by the fraud of a party, the statute of limitations begins to·run from the time when, by the exercise of ordinary diligence, the fraud could have been discovered by the other party, or by a trustee having the right to sue for the party in interest.

When a demurrer to a bill in equity alleges that the plaintiffs have not stated in their bill such a case as entitles them to any relief in equity against the defendants, that is a sufficient compliance with the rule in equity requiring the special grounds of a demurrer to be stated.

*Decided November 12th, 1909.*

Appeal from the Circuit Court of Baltimore City (HEUIS-LER, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE and THOMAS, JJ.

*Thomas Hughes* and *Clifton Doll Benson,* for Helen Griffith *et al.,* appellants.

*Edgar H. Gans* and *Frank Gosnell* (with whom was *Bernard Carter* on the brief), for the appellees.

BURKE, J., delivered the opinion of the Court.

The record in this case shows that William Lanahan, Sr., had been for many years engaged in the foreign and domestic liquor business in the City of Baltimore, and that in the latter years of his life his son, Samuel J. Lanahan, was associated with him as a partner in the business, the co-partnership being known as William Lanahan & Son. William Lanahan was the owner of valuable real and personal property, and the capital of the partnership business had been furnished exclusively by him. Desiring to retire from the business and

dissolve the co-partnership, he executed and delivered to his son, Samuel J. Lanahan, a deed of trust of all his property of every kind and description, real, personal and mixed. This deed was dated the 8th day of June, 1868, and, in addition to the trusts therein created, the deed contained certain stipulations, which will be presently stated, between William Lanahan and his son Samuel J. Lanahan as to the conduct and management of the business. The terms and conditions of the stipulations and the specific trusts contained in the deed are substantially as follows:

1st. That at the time of the execution thereof and up to the first day of June, 1868, the firm of William Lanahan & Son was indebted to Samuel J. Lanahan in the sum of twelve thousand dollars for his proportion of profits to that date, and no more.

2nd. That said firm was then and there dissolved, but that whilst William Lanahan withdrew from the active participation of the business the same should be continued and carried on under the same firm name for a period of six years from the 1st day of June, 1868, by Samuel J. Lanahan, he using to that end all the property of every kind and description, save and except the real estate of William Lanahan, in any manner he deemed necessary for the successful prosecution of the business, until the 1st day of June, 1874.

3rd. That Samuel J. Lanahan was entitled to receive from the 1st day of June, 1868, and during the stipulated time named in the agreement, one-fourth of the net profits derived from the business from his labor, as compensation for his responsibility in the premises, and the remaining three-fourths were to be paid over by him to William Lanahan at such times and in such manner as he required the same, and in the event of the death of said William Lanahan prior to the first day of June, 1874, Samuel J. Lanahan was to continue in possession of the real and personal property that passed under the deed to be held by him upon the following trusts:

A. He was to continue the conduct of the business until the 1st day of June, 1874, and the profits derived therefrom in the meantime between the period of the death of William Lanahan and the 1st of June, 1874 (after deducting his own one-fourth), were to be divided into equal proportions among the seven children of the said William Lanahan, viz, Mary C. Lanahan, William Lanahan, Jr., Josephine Lanahan, Charles M. Lanahan, Emma Lanahan, Harry W. Lanahan and Gertrude M. Lanahan.

B. That out of said profits and assets of the business, and out of the property, if necessary, Samuel J. Lanahan should liberally and amply provide for the maintenance, support and education of his brothers and sisters, all of whom at that time were minors under twenty-one years of age.

C. That on the 1st day of June, 1874, the business as conducted by Samuel J. Lanahan should be wound up and brought to a close, and the interest of the respective parties accurately ascertained, and, if William Lanahan had died before the 1st day of June, 1874, the property, real, personal and mixed, that passed under the deed, was to be divided equally between the eight children of William Lanahan, and all profits made in the business of William Lanahan & Son, from the date of the deed of trust up to the 1st of June, 1874, after deducting the one-fourth interest of Samuel J. Lanahan, were to be divided equally between the remaining seven children of William Lanahan mentioned above in the following manner, subject to the following restrictions and provisions:

1st. The portion to which each of the daughters of William Lanahan would be entitled, Samuel J. Lanahan should convey to a trustee or trustees to be selected, if necessary, by asking their appointment by a Court of Equity, so that the said daughters would receive the rents, income and profits derived therefrom during their lives respectively, and at their deaths the principal to be paid to their children.

2nd. The portion to which each of the sons would be entitled, if they were minors, should likewise be conveyed and paid over to a trustee or trustees to be invested for their benefit, so that the rents, income and profits derived therefrom should only be paid over to them until they should respectively arrive at the age of twenty-five years, when they should be entitled to the principal.

3rd. That if William Lanahan died before the 1st of June, 1874, full power and authority was given to Samuel J. Lanahan as trustee, after that date, but not before, for the purpose of making a division of the estate among those entitled, to sell, dispose of and convey absolutely any and all of the real or leasehold property that passed under the deed.

4th. The first stipulation of the deed was a reservation to Thomas M. Lanahan, a brother of the grantor, to wind up and have discontinued the business earlier than the 1st of June, 1874, in the event of the death of William Lanahan before that period, if, during the progress of the business, his judgment directed that said business should be wound up.

Immediately upon the execution and delivery of the deed, Samuel J. Lanahan took possession of all the property that passed thereunder, and continued the business in which he and his father had been engaged until the 1st day of June, 1874, as provided in the deed of trust. William Lanahan was then dead, having departed this life on the 8th of August, 1868. The time had now arrived for winding up the business, and for dividing the estate that had passed under the deed, as well as all profits arising from the conduct of the business, among the parties entitled thereto. For this purpose full power had been given Samuel J. Lanahan, trustee by the deed to sell all the real and leasehold property; but he declined to exercise the power, preferring that the division should be made through the intervention of a Court of Equity.

Before there could be a division of the profits of the business from June 1st, 1868, to the 1st day of June, 1874, it was necessary that a careful examination should be made of

the books containing the record of the business, and that Samuel J. Lanahan as trustee should render an account of all the dealings in the management of the business. It was also necessary that he should account for all property that had passed to him under the deed, or which belonged to the trust estate. During the conduct of the business by Samuel J. Lanahan as trustee it was not deemed advisable that letters of administration should be taken out upon the estate of William Lanahan, deceased; but preparatory to a final settlement and division of his estate such letters were granted to Thomas M. Lanahan and Oliver Reeder.

On the 24th of September, 1874, a bill was filed in the Circuit Court of Baltimore City by Thomas M. Lanahan and Oliver Reeder, administrators of Wm. Lanahan, deceased, and by Oliver Reeder in his own right and Mary C. Reeder, his wife, and Josephine Lanahan and William Lanahan, Jr., and wife against Samuel J. Lanahan individually and as trustee, and all the other children and heirs at law of William Lanahan, deceased. This bill, after reciting substantially the facts we have stated, charged that the real estate of William Lanahan, deceased, could not be equally and fairly proportioned or divided among the parties entitled thereto without a sale thereof, and that it would be to the interest, benefit and advantage of all the parties, adults as well as infants; first, to have the profits ascertained and the business closed up, and the estate of William Lanahan properly divided among his children according to the terms and directions of the deed of trust; and secondly, to have the real estate sold for that purpose; but that the same could not be done, nor the provisions of the deed and agreement respecting the shares of the daughters of said deceased, nor of his sons, be properly carried out except through the instrumentality of a Court of Equity; first, because of the infancy of some of the parties; and secondly, because none of the sons of the said deceased, other than Samuel J. Lanahan, had reached the age of twenty-five years, the period at which the

sons would be entitled to their principal share of their father's estate.

The relief prayed for in the bill was first, that Samuel J. Lanahan, as trustee, should render a full, accurate, and reliable schedule or schedules of all the property not only that had passed to him under the deed of trust as of the date thereof, but also as of the date of the death of William Lanahan, and of the 1st day of June, 1874, and that he should render full and accurate account or accounts of all his transactions as trustee in the conduct and management of the business from the 1st day of June, 1868, to the 1st day of June, 1874, under the provisions of the deed and agreement aforesaid in order that there might be an ascertainment and division of the profits, if any, made in the conduct of said business, and that Samuel J. Lanahan might be required to deliver over to the administrators of William Lanahan, deceased, all personal property which came into his hands under and by virtue of the provisions of the deed of trust, and which had not been sold or otherwise disposed of, or, if sold, that he be required to pay over to said administrators the proceeds of such sale or account to said administrators for the same, and that likewise that he should be required to account to and pay over to the administrators all profits accruing from the business up to the 1st day of June, 1874; and secondly, that all the real estate might be sold and the proceeds thereof brought into Court for distribution among the parties entitled thereto.

The answer of Samuel J. Lanahan, individually and as trustee, admitted the allegations of the bill to be true, and filed three schedules, marked Exhibits "A," "B" and "C," which he stated contained accurate and just statements of the facts therein set forth. Exhibits "A" and "B" are here transcribed.

### Exhibit A.

Property turned over to Samuel J. Lanahan, Trustee, by the deed of William Lanahan, executed June 8th, 1868:

| | | |
|---|---:|---:|
| Cash | $19,360.98 | |
| Bills receivable | 14,356.06 | |
| Open accounts | 95,785.11 | |
| Store building, Light Street | 18,864.58 | |
| Dwelling, lot and furniture, Lexington Street | 15,000.00 | |
| Mdse. on hand | 30,863.33 | |
| Do. in bond | 5,835.67 | |
| | | $200,065.73 |

LIABILITIES.

| | | |
|---|---:|---:|
| Open accounts | $ 5,486.64 | |
| S. J. Lanahan | 12,000.00 | |
| | | 17,486.64 |
| | | $182,579.09 |

### Exhibit B.

Assets and property of the firm of William Lanahan & Sons, August 31st, 1874:

| | | |
|---|---:|---:|
| Cash | $ 2,853.34 | |
| Merchandise | 9,743.00 | |
| Open accounts | 124,890.77 | |
| Bills receivable | 24,407.51 | |
| Store fixtures | 200.00 | |
| Warehouse on Light Street | 30,000.00 | |
| Lot on Light Street | 10,000.00 | |
| Dwelling, lot and furniture, Lexington Street | 15,000.00 | |
| | | $217,094.82 |

LIABILITIES.

| | | |
|---|---:|---:|
| Bills payable | $11,000.00 | |
| Open accounts | 146.95 | |
| | | 11,146.95 |
| | | $205,947.87 |

Exhibit "C" is merely a more detailed statement of some of the items appearing in Exhibit "B."

The evidence of Samuel J. Lanahan and John Thomas Washburne was taken under a commission. Mr. Lanahan testified that Exhibit A filed with his answer was a true, accurate, and faithful account of the property turned over to him by the deed of June 8th, 1868; that it was taken from the books of William Lanahan & Sons, and that he took stock at the time of receiving the deed in order to ascertain what property was turned over to him by his father. He further testified that Exhibit B was a correct statement of the assets and property of William Lanahan & Son as of the 31st of August, 1874, and that the property was then in his hands as trustee, and that the books of the firm showed the account to be correct. He further stated that he would have another account to furnish which would exhibit the dealings of the house and the profits, if any, since the 31st day of August, 1874. This testimony was corroborated in all particulars by that of Mr. Washburne.

On January 4th, 1875, a decree was passed in the cause whereby it was adjudged that the complainants were entitled to relief, and that the entire estate of William Lanahan, deceased, should be administered in that Court, and that the parties in interest were entitled to have a division of the entire estate in order that they might have and hold their interest therein in severalty according to the terms and provisions of the deed of trust. To the end that such division and partition might be made the decree provided that "Samuel J. Lanahan, the trustee named in said deed, is hereby ordered and directed to yield up, surrender and convey unto Thomas M. Lanahan and Oliver Reeder all the trust property of every kind and description which passed to him under said deed, as said property existed at the time of making said deed, or as it may have been changed or converted since the date thereof by the said Samuel J. Lanahan in execution of his powers as trustee, an dthe said Samuel J. Lanahan account and pay over to the said Thomas M. Lanahan and Oliver

Reeder all profits remaining from the conduct of the said' business of William Lanahan & Son from the day of the date of said deed of trust until the date of this decree, and all of which property and profits when so conveyed and made over to them the said Thomas M. Lanahan and Oliver Reeder shall hold in trust until the further orders of this Court distributing the same among the *cestuis que trustent* entitled thereto. And it is further adjudged, ordered and decreed that the said Thomas M. Lanahan and Oliver Reeder be and they are hereby appointed trustees to sell all the real estate and personal estate embraced in the trust and not disposed of by the said Samuel J. Lanahan in the conduct of said business provided for under said deed aforesaid, or so much thereof as is in its nature vendible and not divisible by public sale in the City of Baltimore."

The decree directed that three weeks' notice should be given of the sale of the real estate and ten days' notice of the sale of the personal estate by advertisement in each daily newspaper published in Baltimore City. The trustees qualified by filing their approved bond, and entered upon the discharge of their duties. They collected and distributed, as shown by seven auditor's accounts appearing in the record dealing with the principal, or *corpus* of the estate, the sum of $198,332.70, which was only $7,615.17 less then the entire estimated estate as of August 31st, 1874, as shown by Exhibit B, filed with the answer of Samuel J. Lanahan. But it is also shown that the Light street property sold for $4,000 less than the estimate put upon it by that exhibit, while the Lexington street property and the household furniture sold for $2,735.85 more than the value placed' upon it by that schedule. The difference of about $6,000 between the value of the *corpus* of the estate as estimated by Samuel J. Lanahan and the amount realized and distributed by the trustees may have occurred and be accounted for by the inability of the trustees to collect some of the book accounts and bills receivable which the schedule showed to be $149,298.28. Other

auditor's ccounts, dealing with the rents, interest, and other incomes were filed from time to time down to June 4th, 1877.

Mary C. Lanahan married Oliver Reeder, and died in 1874, leaving surviving her as her only heir at law, an infant daughter, Bertha R., who was made one of the defendants in the suit. He afterwards married Josephine Lanahan, another daughter of William Lanahan. It thus appears that Mr. Reeder, one of the trustees, under the decree of January 4th, 1875, was the father of one distributee and the husband of another.

On the 10th of May, 1876, Thomas M. Lanahan was appointed by the Circuit Court of Baltimore City trustee for Emma Lanahan and Gertude M. Lanahan, and qualified and acted as trustee for Gertude M. Lanahan until the 14th day of February, 1890, and for Emma Lanahan until July, 1900.

The record also shows that Samuel J. Lanahan, at the time of his death, was trustee for Mrs. Reeder, Mrs. Griffith, formerly Emma Lanahan, and for Mrs. Welker, formerly Gertude M. Lanahan, who had married Phillip Welker.

In March, 1908, upon petitions filed in this cause, new trustees were appointed in place and stead of Samuel J. Lanahan, deceased, and on the 6th day of August, 1908, the bill of complaint now before us was filed in this cause *to enforce the decree of January 4th, 1875*. The plaintiffs are Helen Griffith, an infant daughter of Mrs. Griffith, and Philip Lanahan Welker, an infant son of Mrs. Gertude M. Welker. To this bill William Lanahan and Thomas J. Wilson, the administrators of Samuel J. Lanahan, and Bertha R. Carr and William W. Carr, all of whom were made defendants, demurred, and they assigned as grounds for the demurrer:

1st. Want of Equity.

2nd. Limitations.

3rd. Laches.

The Court after full argument, sustained the demurrer, and no application to amend having been made, an order was passed dismissing the bill with costs, and from that order the plaintiffs have appealed.

The prayer of the bill is that the Court would enforce the decree of January 4th, 1875, and compel the administrators of Samuel J. Lanahan to account for the assets of every kind and description held or received by him as trustee, or with which he is justly chargeable, whether personal property, open accounts, stock in trade, fixtures, good will and trade marks, business, formulas, and all the profits which may have accrued in the business conducted by him under the firm name of William Lanahan & Son up to the death of Samuel J. Lanahan.

Upon the facts which we have stated, we hold that laches and limitations constitute a complete bar to the prosecution of this suit. The trusts created by the deed of June 8th, 1868, were terminated by the decree of January 4th, 1875, and the Court assumed thereby jurisdiction of all the property which passed under that deed. The trustees appointed to make the settlement and division of the estate, as appears by the record, were diligent and faithful in the discharge of their duty. After the lapse of more than thirty years, and after the death of all the persons well acquainted with the facts, an effort is made to inquire into the settlement and to have a new accounting. All persons interested in the real and personal estate of William Lanahan, deceased, were represented in the settlement of his estate by Thomas M. Lanahan and Oliver Reeder, as administrators and as trustees under the decree of January 4th, 1875, and the life tenants, the mothers of the infant plaintiffs, were represented in a special manner by Thomas M. Lanahan as trustee under the decree above mentioned.

It cannot be doubted that these trustees had full knowledge of the whole estate with which they were dealing. Thomas M. Lanahan was a brother of the deceased, and was charged with important duties and invested with large powers under the deed of June 8th, 1868, and Mr. Reeder, as we have seen, was a son-in-law of the deceased. Their relations to the estate and to the parties interested, and the nature of their duties forbid the assumption that they were not fully

advised of every fact necessary for them to know in order to make a fair and just settlement and division of the entire estate among the parties entitled thereto as it was their duty to do under the decree. If it can be possible to suppose that there was any fact, or circumstance which they did not know, it is certainly true that they had every opportunity to know it.

The defendants seek to avoid the defense of limitations upon the ground that Samuel J. Lanahan concealed all knowledge of his failure to fully account not only from the complainants, but from all other parties interested. It is somewhat difficult to perceive how it can be said that he concealed anything from persons who were not then in existence, or how the mere allegation of concealment can affect the legal results which flow from the facts disclosed by the record upon which the suit rests.

The law requires suits of this nature to be brought within three years from the time the cause of action accrues, and "where a party has a cause of action of which he has been kept in ignorance by the fraud of the adverse party, the right to bring suit shall be deemed to have first accrued at the time at which such fraud shall, or with usual, or ordinary diligence might have been known, or discovered. *Acts of 1868,* Chapter 357; *Code 1904,* Article 75, sec. 14.

It is said in *Wear v. Skinner,* 46 Md. 265, that it is well settled "that where a party has been injured by the fraud of another, and such fraud is concealed, or is of such character as to conceal itself whereby the injured party remains in ignorance of it *without any fault or want of diligence on his part,* the bar of the statute does not begin to run, until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party." If it be true that Samuel J. Lanahan were guilty of the fraudulent concealment alleged, and that the trustees knew, or by the exercise of ordinary diligence might have known, or discovered it, the bar of the statute is not removed, because it is well settled that such knowledge, or want of ordinary dili-

gence on the part of the trustees is imputed to the plaintiffs.
*Crook* v. *Glenn,* 30 Md. 55.

But it is not necessary to rest the decision of the case upon
this ground, because we are of opinion that the plaintiffs
have not stated such a case as entitles them to any relief in
a Court of Equity. The defendants assigned as one of the
grounds of the demurrer that the plaintiffs have not stated in
the bill such a case as entitled them to any relief in equity.
The plaintiffs have contended that this does not comply with
the rule which requires every demurrer to state the special
grounds upon which it is based. This form of statement has
always been regarded by the profession in this State as a suf-
ficient compliance with the rule, and has been uniformly
adopted by it to raise the question of the want of equity in
the bill, and we think it is a sufficient assignment of a ground
of demurrer under the rule.

The bill alleges first, that the merchandise and fixtures of
William Lanahan & Son were not accounted for by Samuel
J. Lanahan, trustee; secondly, that the trade mark "Hunter,"
the brands, and good will of the firm, were not accounted for
by him, and that these frauds were accomplished by the
fraudulent concealment of Samuel J. Lanahan; thirdly, that
collections were made by Samuel J. Lanahan of the assets of
the old firm which he fraudulently appropriated to his own
use.

It must be borne in mind that the whole case made by the
bill rests upon the record in the case in which trustees were
appointed to close up the business and make division of the
estate of William Lanahan, plus the one statement that in
1902, in a certain equity proceeding instituted in a Federal
Court in the State of New York by the firm of William Lan-
ahan and Son, then composed of Samuel J. Lanahan, Wil-
liam Lanahan and Charles M. Lanahan, Samuel J. Lanahan
had sworn that the trade mark was worth a million dollars.
These allegations of fraud, so far as they or any of them are
inconsistent with the record which is the foundation of the

suit, must be disregarded by the Court. The averment that Samuel J. Lanahan failed to account for the merchandise and fixtures is shown by the record to be untrue. The accounts of the trustees very clearly show that these assets of the estate were accounted for and distributed by them. The allegation of fraudulent appropriation of the assets of the firm are too loose and indefinite to be noticed.

As to the trade-mark, brands and good will. It is quite true that these were not shown in the schedules furnished by Samuel J. Lanahan to the trustees; but it does not follow that they were fraudulently omitted therefrom. While it was the duty of the trustees in the sale of the business to obtain from the purchaser *the then fair value* of these assets, it might well have been considered, and doubtless was so considered, that in a schedule of this character it was not necessary to include these things. Certainly the Court could not say from the mere fact that they were not mentioned that they were omitted with a fraudulent purpose.

The record shows that sometime after the first of June 1874, Samuel J. Lanahan and William Lanahan, Jr., formed a new firm under the old name of William Lanahan & Son, and that it made purchases of the assets and property of the old firm from the trustees. They bought the warehouse property on Light street, and continued the same business in which their father was engaged, using the same trade-marks, brands, etc., to which they claimed title. This must have been well known to the trustees and to all the other parties interested. No question seems ever to have been made to their possession by anybody. Is the Court now to say, after more than a quarter of a century, that their possession was unlawful? Can any one, upon the facts contained in this record, be heard to say in a Court of Equity, or in any other Court for that matter, that this business, with its trade-marks, brands, etc., was obtained by fraud? The mere statement of the proposition in the light of the circumstances of the case carries its own refutation. The law presumes the rightfulness of the ownership and possession acquired under such

circumstances, and refers the possession to a sale of the property by the trustees appointed by the decree of January 4th, 1875. The principle announced in *Crook* v. *Glenn, supra,* controls this case. There a mortgagee and those claiming under him had been in the exclusive and uninterrupted possession of certain land for more than thirty years. Upon a bill filed to obtain a decree for the surrender and cancellation of the mortgage, and the delivery of the possession of the mortgaged property, the Court said: "No presumption can be indulged against the rightfulness of such possession as is shown here; on the contrary, all presumptions are indulged in its favor. In this case nearly thirty years were allowed to elapse before the possession of Mr. Glenn and those claiming under him, was attempted to be brought into question; and as time naturally operates to obscure all human evidence, and to deprive parties, thus called upon to vindicate the integrity of transactions remote in the past, of the legitimate and appropriate means of verifying their true character, the lapse of time must be allowed to give rise to a presumption of innocence, and against any imputation of wrong. And so solicitous is the law, and especially when administered by a Court of Equity, for the repose of titles and the quiet of possession, that when possession of lands is shown to have existed, as in this case, for a great length of time, without interruption, all those circumstances or formal ceremonies which the law deems necessary to make such possession rightful, will be supplied by presumption; and the possession thus supported will not be disturbed. *Knight* v. *Adamson,* 2 Freem. 106; *Lyford* v. *Coward,* 1 Vern. 195. To no case could such presumption be more properly applied than to the present."

The affidavit of Samuel J. Lanahan made more than twenty-five years after the settlement as to the *then value* of the trade-mark "Hunter" gives the Court no idea of its value at the date when the business was taken over by the new firm in 1875. The record does not show that any of the property, except the Lexington street house, was sold at public sale as directed by the decree; but this circumtsance we regard as

immaterial, as the money arising from the private sales, if it be conceded that the property was disposed of in that way, was distributed to and accepted by the parties entitled as shown by the auditor's account.

The arguments of the learned counsel showed how difficult it is, after the lapse of many years and after the death of all the witnesses who alone were most familiar with the facts, to explain the transactions which are the subject matters of this suit, and have demonstrated the wisdom of the rule, so admirably stated by CHIEF JUSTICE FULLER in *Hammond* v. *Hopkins*, 143 U. S. 274: "In all cases where actual fraud is not made out, but the imputation rests upon conjecture, where the seal of death has closed the lips of those whose character is involved, the lapse of time has impaired the recollections and obscured their details, the welfare of society demands the rigid enforcement of the rule of diligence. The hour glass must supply the ravages of the scythe, and those who have slept upon their rights must be remitted to the repose from which they should not have been aroused."

Without further prolonging this opinion, the decree appealed against will be affirmed.

*Decree affirmed with costs.*