# LULA A. BLANCH *v.* DAVID W. COLLISON
## [No. 3, April Term, 1938.]

428

*Decided May 18th, 1938.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*William J. McWilliams* and *John A. Cochran*, with whom were *George W. Haley* and *McWilliams & Duckett* on the brief, for the appellant.

*Noah A. Hillman*, for the appellee.

PARKE, J., delivered the opinion of the Court.

The appeal here is from a decree of the chancellor which sustained the demurrer to an amended bill of complaint, and dismissed the suit, with costs to the defendants.

A certain Richard W. Ward owned some years ago a parcel of land of sixty square perches in Anne Arundel County, and became indebted to Nicholas G. Collison in the sum of $100. To secure the indebtedness, Ward executed a mortgage whereby he conveyed the land to Collison by deed dated May 22nd, 1899, and duly recorded. Later, and after the maturity of the mortgage debt, Ward, who was then inter-married with Sarah E. Ward, executed a deed, dated July 30th, 1904, which purported to convey the land to his wife, Sarah E. Ward. The deed was recorded. On December 29th, 1905, Richard W. Ward and Sarah E. Ward, his wife, are alleged to have executed a second mortgage on the same land to Nicholas G. Collison to secure an extension for two years of the payment of the original debt,

which had been reduced to $85, and for which a second note of even date therewith for $85 and payable to Collison two years after date was given by the husband. The mortgage was recorded. During the year 1906, Richard W. Ward and Sarah E. Ward, his wife, who were negroes, moved from Anne Arundel County, where they had been living, to Baltimore City. Before they left, it is alleged that they entered into an agreement with Collison whereby he undertook to act as the agent of the mortgagors for the purpose of managing the mortgaged premises and other property, and of collecting the rents and applying any collections to the credit of the then existing mortgage debt. The bill of complaint further charges that Nicholas G. Collison did collect the rents and profits from 1906 until the time of his death on May 30th, 1908, and that the amounts, so charged to have been received, were in excess of the principal and interest due on the mortgage debt, but the mortgage and the debt secured were not released. It will be observed that the agreement set up charges that the receipts were to be applied on the "then existing mortgage debts," and that the later allegations are in reference to a single mortgage debt, without any attempt to identify which mortgage debt is meant. The conflicting nature of these statements introduces an element of uncertainty and indefiniteness, which are inconsistent with good pleading.

Nicholas G. Collison died testate, and letters testamentary were granted on June 9th, 1908, by the Orphans' Court of Anne Arundel County to David W. Collison, his son and executor. The further allegations are that David W. Collison, in his representative capacity, instituted foreclosure proceedings in the Circuit Court for Anne Arundel County under the power contained in the first mortgage deed, but that the mortgage note filed with the statement of the mortgage claim is the note of $85, dated December 20th, 1905, for which the second mortgage deed was given. Again, there is indefiniteness with respect to the matter of the mortgage debts,

which arises from the facts that there is no averment nor disclosure of the amount of the debt claimed and as set forth in the statement of the mortgage claim, and that there is no inconsistency in filing the evidence of a second mortgage debt under a second mortgage lien on the same land which is being foreclosed by virtue of a power of sale contained in the first mortgage deed. After the application of the proceeds of sale to the payment of the first mortgage lien, the lien of the second mortgage or other subsequent mortgage liens would be enforced according to their respective priorities against the residue, if any, of the proceeds. Code, art. 66, sec. 12.

The chancellor treated both mortgages as being for the same indebtedness, which by the time of the execution of the second mortgage had been reduced from its original amount of $100 to $85. The allegations of the bill leave the matter factually ambiguous, since it appears from the recitals in the second mortgage that the mortgagee had agreed to extend the payment of the first mortgage for a period of two years in consideration of the execution of the note for $85 and of the mortgage to secure the payment of this second note. The bill of complaint should not have left the matter so doubtful, although this vice is not vital, as it does not control the decision. 19 *R. C. L.* sec. 235, p. 452; 41 *C. J.* sec. 203, p. 387.

Without further comment on the indefinite quality of the bill of complaint, the statement of its averments will be resumed. It is set forth that, under the foreclosure proceedings mentioned, which were had pursuant to the power of sale contained in the mortgage deed, the land in question was sold at public auction to David W. Collison, the highest bidder, for the sum of $75; and the sale so made was reported and filed in the cause and an order *nisi* was passed, but the sale has never been ratified, and after the report nothing further appears to have been done in the equity cause. *Rieman v. Wagner,* 74 Md. 478-480, 22 A. 72; *Stoll v. Smith,* 129 Md. 164, 98 A. 530; Code, art. 66, secs. 9, 13.

Since the death of Nicholas G. Collison in 1908, it is charged that David W. Collison has collected the income, rents, and profits of the land, which, it is said, have aggregated the sum of $1,700 in that time; and that, in addition, David W. Collison has been paid the sum of $800, as insurance for the destruction by fire, on March 13th, 1934, of a frame dwelling on said property.

Richard W. Ward died intestate on December 1st, 1934, and his widow, Sarah E. Ward, attempted to convey said land unto their daughter, Lula A. Blanch, by deed dated December 10th, 1935, and, on March 25th, 1936, the widow and mother died intestate. On April 20th, 1937, the daughter, Lula A. Blanch, was appointed by the Orphans' Court of Anne Arundel County the administratrix of both her father and her mother.

The bill of complaint concludes with the statement that Richard W. Ward could neither read nor write, and that his wife, Sarah E. Ward, could read and write but little, and that neither understood anything about business or business affairs. In the absence of any allegation which charges either duress, mistake, deceit, misrepresentation, or any form of fraud, these last allegations are immaterial on demurrer. Nor, under the averments made, is the further statement that neither of the mortgagors was personally notified nor had knowledge of the mortgage foreclosure proceedings of any legal consequence. Each of the mortgages contained the power of foreclosure on default of the mortgagors in any of the covenants of the mortgage deeds, and no notice is contemplated and required other than the proceedings begun and conducted in conformity with the terms of the mortgage and the statute. Code, art. 66, secs. 6-14; *Cockey v. Cole*, 28 Md. 276, 282; 19 *R. C. L.*, sec. 419, p. 603; *Dyer v. Shurtleff*, 112 Mass. 165.

Again, both mortgages were on record and were unreleased, and the records of the Circuit Court for Anne Arundel County showed the foreclosure proceedings under the earlier mortgage deed to have been conducted and carried to the point of a sale made and reported,

with an order *nisi* passed thereon, but not finally ratified and confirmed. Of all these records the grantee, Lulu A. Blanch, had constructive notice. Code, art. 21, secs. 13, 15, 29, 32; *Baker v. Baker,* 108 Md. 269, 273, 70 A. 418, 420; *Sanders v. McDonald,* 63 Md. 503, 507-513; *Wilmer v. Light Street Savings & Bldg. Assn.,* 143 Md. 272, 279, 122 A. 129, 131.

It is upon the alleged facts here recited that Lula A. Blanch, in her own behalf and as the administratrix of the separate estates of her father, Richard W. Ward, and of her mother, Sarah E. Ward, began a suit in equity against David W. Collison, individually, and in his representative capacity as executor of Nicholas G. Collison, in order to obtain general relief, and, specifically, to secure an accounting for the income, rents and profits arising out of the mortgaged property as well for those that were received by his testator, Nicholas G. Collison, as for those which were received by David W. Collison for the benefit respectively of Richard W. Ward and Sarah E. Ward; and for the insurance money paid to the defendant for the dwelling destroyed by fire; and to procure a release of the two mortgages mentioned, and a declaration that the property is and would be held by Lula A. Blanch free and clear of him and those claiming by or under him.

The demurrer to this bill of complaint raises many obvious questions which affect its form or sufficiency of content to show any basis for equitable relief, but it is not necessary to consider more than the principal defect, as the decree which dismissed the bill of complaint must be affirmed.

The two mortgages conveyed the title of the mortgagors to the land in fee simple, and provided for the possession of the premises by the mortgagors, which, according to a stipulation of the mortgage deed, was limited to so long as the mortgagors made no default in the payment of the principal and interest of the mortgage debt and performed all the other covenants by them undertaken. If any such default should occur, the mort-

gagee, pursuant to his grant, had the right of entry, together with that of possession and the usufruct of the land. The entry and possession by the mortgagee Nicholas G. Collison is averred by the bill of complaint to have been after default and so was of right, although, according to the tenor of the mortgage deed, the mortgagee in possession was bound to account in equity for the net rents, crops, and profits of such possession as payments on account of the mortgage indebtedness. *Baker v. Baker,* 108 Md. 269, 276, 277, 70 A. 418, 421; *Barron v. Whiteside,* 89 Md. 448, 43 A. 825; *Tiffany on Real Property* (2nd Ed.) secs. 611, 612, 613. So, if and when such net receipts should discharge by payment the mortgage obligations, thereupon the further possession of the mortgagee became adverse to the owner of the 'equity of redemption, who had become, by such extinguishment of the mortgage debt, entitled to the surrender of the premises and to a release of the lien of the mortgage deed.

Since the bill of complaint states that the rents and profits received by Nicholas G. Collison, during the period following his entry and before his death of May 30th, 1908, had discharged the principal and interest of the mortgage debt, but that he had died in possession, and without having executed a release of said mortgage lien, the adverse possession of Nicholas G. Collison began before his death. *Tiffany on Real Property* (2nd Ed.) sec. 645, p. 2657. If, however, the possession of Nicholas G. Collison be ascribed to the alleged separate agreement of the mortgagors and mortgagee rather than to an adverse possession, after default, in accordance with the terms of the mortgage deed, any possession under such separate agreement ended with the death of Nicholas G. Collison, and with the open and notorious manner in which the mortgagee's executor forthwith denied any rights of the mortgagors to the possession of the land by his entry and foreclosure under the mortgage deed. *Tiffany on Real Property* (2nd Ed.) sec. 513 (i), pp. 2020-2022. After the death of the mortgagee, his execu-

tor began foreclosure proceedings, a sale of the mortgaged property was made, and a report of sale was filed in the equity proceedings showing a public sale of the property on March 9th, 1909, to David W. Collison, and an order *nisi* was passed, but the sale does not appear to have been ratified. Thereafter David W. Collison took and held possession as purchaser at the mortgage foreclosure sale. His subsequent possession was a notorious and unequivocal act of exclusion in the sequence of purchase, entry, and exclusive possession. *Buswell on Limitations & Adverse Possession*, sec. 316; *Beall v. Harwood*, 2 H. & J. 167; *Brown v. Stewart*, 56 Md. 421, 430; *Berry v. Derwart*, 55 Md. 66, 73; *Ehrman v. Mayer*, 57 Md. 612, 624. Richard W. Ward died in 1934, and Sarah E. Ward in 1936. During this period of more than 25 years no step was taken by either in assertion of any right of title or possession until after the death of Richard W. Ward, when the plaintiff Lula A. Blanch made demand upon the said David W. Collison to recognize her "rights and to restore that which is rightfully hers, all of which demands the said David W. Collison has refused." The bill of complaint in the cause at bar was filed on August 25th, 1936.

During this period of more than twenty-five years, the averments of the bill of complaint are to the effect that David W. Collison and no one else has been in complete possession of the land in question. It further appears that his possession is neither permissive nor consistent with the title of another, but is under a claim of right as the purchaser at a duly reported mortgage foreclosure sale upon which the usual order *nisi* was passed but which, although no objections nor exceptions appear to have been made to the sale, remains without a final order of ratification. During this period, David W. Collison is shown to have exclusively received the rents, income, and profits of the property and to have been paid the loss by fire, on March 13th, 1934, of a frame dwelling which was on the land. *Infra; Shriver v. Shriver*, 86 N. Y. 575; *Chickering v. Failes*, 26 Ill. 507; *Buswell on*

*Limitations & Adverse Possession,* secs. 264, 267; *Somerville v. Trueman's Devisees,* 4 H. & McH. 43. So, during this period, the man and his wife knew that David W. Collison was in actual enjoyment of the land which belonged to them successively as the owner. The failure of each to prosecute his and her successive right at law or in equity during the period of limitation or twenty years, when, by reason of the mortgage debt having been paid in full during the lifetime of Nicholas G. Collison, there was nothing to prevent the mortgagors respectively so to prosecute his and her right at law or in equity to the title and possession of the land, must bar them both of remedy at the expiration of such period, because of the statute of limitations, Code Pub. Gen. Laws 1924, art. 57, sec. 10. *Armstrong v. Risteau's Lessee,* 5 Md. 256; *Wickes v. Wickes,* 98 Md. 307, 56 A. 1017. See *Stieff Co. v. Ullrich,* 110 Md. 629, 635, 73 A. 874, 876; *Reeder, Trustee, v. Lanahan,* 111 Md. 372, 385, 74 A. 575, 579, 580.

The publicity and notoriety of such possession, together with the sale reported under the foreclosure proceedings, are sufficient to put the parties on notice and to amount to constructive notice. *Jackson ex. dem. Bradstreet v. Huntington,* 5 Pet. 402, 8 L. Ed. 170. Thus, it is said that "If a legal title would be barred in ejectment by twenty years' adverse possession, courts of equity will act upon a like limitation, and apply it to all cases of relief sought upon equitable titles or claims touching real estate. So, if the mortgagee has been in possession of the mortgaged estate for twenty years, without acknowledging the existence of the mortgage, it will be presumed that the mortgage is foreclosed, and that he holds by an absolute title; or if the mortgagor has been in possession of the mortgaged estate for the like space of time, without acknowledging the mortgage debt, this will be presumed to be paid." *Buswell, Limitations & Adverse Possession,* secs. 19, 230, 232; *Weaver v. Leiman,* 52 Md. 708; *Gelston v. Thompson,* 29 Md. 595, 600; *Crook v. Glenn,* 30 Md. 55, 67-72; *Washington,*

*B. & A. Electric R. Co. v. Moss*, 130 Md. 198, 204, 100 A. 86, 88, 89; *Waltemeyer v. Baughman*, 63 Md. 200, 202-205.

The entry and possession of the purchaser under the foreclosure sale was with the intent to claim against the owner of the legal title and the owner of the equity of redemption. So begun, the possession and enjoyment have continued. The possession has lasted without interruption for more than twenty years, and was exclusive of every other right in the premises, since, during the entire period, none other entered or had possession, and the rents, issues, revenue, and profits were all wholly and continuously and openly received and enjoyed by the adverse claimant. *Cummings v. Wyman*, 10 Mass. 464; *Rieman v. Wagner*, 74 Md. 478, 480, 22 A. 72; *Stoll v. Smith*, 129 Md. 164, 98 A. 530; *Bullock v. Staylor*, 125 Md. 699, 96 A. 398; *Erdman v. Corse*, 87 Md. 506, 510, 511, 40 A. 107, 109; *Allen v. Van Bibber*, 89 Md. 434, 43 A. 758; *Goldman v. Miles*, 129 Md. 180, 182, 98 A. 531, 532; *Harrison v. Harrison*, 1 Md. Ch. 331, 336; *Chew v. Farmers' Bank*, 2 Md. Ch. 231, 251-254.

Since the facts set forth in the bill of complaint are only consistent with the actual, exclusive, notorious, visible, and uninterrupted possession of the land in question by David W. Collison for a greater period than twenty years, the plaintiff is without title and equity, and her bill of complaint was rightly dismissed.

*Decree affirmed, with costs to be paid by Lula A. Blanch, appellant.*