(Decided 14th February, 1872.)

---

WILLIAM WINNER *vs.* NICHOLAS G. PENNIMAN.

*Trover by one Joint owner of a Promissory Note against the other, for its Conversion—Prayer and Instruction.*

Where two persons are jointly interested in a promissory note, and one of them deposits it with the other for collection, and he without authority surrenders it to the drawer to be cancelled or destroyed, such surrender is a conversion, and trover will lie therefor, by the other joint owner of the note.

Where an instruction is asked upon certain facts offered in evidence, the conclusion arrived at in the instruction, must be consistent with the truth of the other facts offered in evidence; for if these latter, while not in-

consistent with the truth of the facts upon which the instruction is based, would in conjunction with them establish in law a different theory and a different result, the prayer ought not to be granted.

APPEAL from the Superior Court of Baltimore City. The case is stated in the opinion of the Court.

The cause was submitted to BARTOL, C. J., BRENT, BOWIE, GRASON, ALVEY and ROBINSON, J.

*Wm. Pinkney Whyte,* for the appellant.

*Robert A. Dobbin,* for the appellee.

BRENT, J., delivered the opinion of the Court.

This action was brought by the appellant to recover damages from the appellee for the conversion of a promissory note, given to the appellant by the Rockland and Venango Coal Oil Company, for $5,000, dated the 21st of January, 1865, and payable sixty days after date. The appellee pleaded the general issue, and also " that he did what is complained of by the plaintiff's leave."

That part of the proof in the case to which it is necessary more particularly to refer for a proper understanding of the question presented by this appeal, is as follows: The appellant, it appears, had sold to the Rockland and Venango Coal Oil Company certain oil lands, known as the Blakely Well, for twenty thousand dollars, of which ten thousand dollars were to be paid in cash on the delivery of the deed, five thousand to be secured by the note of the Company at sixty days, and five thousand dollars to be paid in the stock of the Company at $2.50 a share. The sale was duly consummated according to these terms. A deed was executed, the cash payment made, and the note in question delivered to the appellant. This note was afterwards placed by him in the hands of the appellee for collection. While so held certain disputes and difficulties arose between the Company and the appellant—

Winner *vs.* Penniman.

the Company alleging that the property did not turn out as represented, but was entirely valueless for the purpose for which it had been purchased.  They not only refused to pay the note, but demanded that the cash payment of ten thousand dollars, which had been made, should be returned.  These difficulties, the appellee testifies, were afterwards the subject of compromise between the parties, and that he in accordance with the terms of such compromise and with the consent of the appellant, surrendered to the Company the note in question.  The appellant, on the other hand, who was also examined as a witness, testifies that he had not entered into any such compromise with the Company, and that the note was surrendered without his leave or authority.  It was also in proof that the appellee was interested in the note to the extent of one-half or one-fourth.

Upon this state of the proof the defendant's counsel prayed the Court to instruct the jury, "that if they shall find from the evidence that the plaintiff and the defendant were jointly interested in the note, for the conversion of which this action of *trover* is brought, and that the said note was left by agreement between them in the hands of the defendant for collection, then the plaintiff cannot recover."  This instruction the Court granted, and the propriety of so doing forms the subject of inquiry upon this appeal.

It is undoubtedly the general rule, that a tenant in common cannot maintain *trover* against his co-tenant.  The right of possession lies at the foundation of the action, and where two are equally entitled to possession, he who has it cannot be guilty of a conversion by retaining it.  But there may be such an use, or rather misuse, of the joint property as will constitute a conversion, and enable a plaintiff to support *trover* against a party who is jointly interested with him in the ownership.  Where there has been a destruction of the joint property by one of the parties, all the authorities concur in the right of the other to maintain this form of action to recover such damages as will compensate him for the loss of

his share or proportion.  But whether any act short of destruction will amount to a conversion has been doubted, and the decisions upon this point have not been uniform.  Some of the English cases, coinciding with the intimation thrown out by Lord ELLENBOROUGH, in *Heath vs. Hubbard,* 4 *East.,* 128, hold that a sale of the entire property by one of the joint or common owners does not constitute a conversion.  But in *Barton vs. Williams,* 5 *Barn. & Ald.,* 395, it was otherwise held by two of the Judges who heard the cause, and although its final decision did not turn upon this point, the soundness of their views seems to be conclusive of the question.  ABBOTT, C. J., says:  "It is laid down by Lord Chief Baron COMYN, that if a bailee sells the goods of another, the very act of sale on his part is such a conversion as to entitle the owner to maintain *trover,* and if that be so, it follows that if a bailee, in possession of undivided shares belonging to two persons sells the whole, it must be a conversion as to the undivided part belonging to one, over which he has no right or title whatever."  And BAYLEY, J., says:  "There may be cases in which the indivisible nature of the subject-matter of the tenancy in common, may raise an implied authority in one to sell the whole.  But unless there be such authority, either express or implied, a sale of the whole by one tenant in common is, with respect to the other, a wrongful conversion of his undivided part."  This doctrine is found to be fully supported by the weight of American authorities.  In *Wilson vs. Reed,* 3 *Johns. Reps.,* 175, it is said:  "Tenants in common of a chattel have each an equal right in the possession, and the law will not afford an action to the one dispossessed because his right is not superior to that of the possessor; but tenants in common are not like partners—the latter may dispose of chattels by virtue of an implied authority to sell, without being liable as for a *tort,* whilst the former cannot dispose of them without violating the right of their co-tenants; for a sale therefore of a chattel, an action of *trover* will lie by one tenant in common against another."  To the same effect are the cases of *Hyde vs. Stone,* 9 *Cowen,* 231, and *Gil-*

*bert vs. Dickerson,* 7 *Wendell,* 450.   In *Weld vs. Oliver,* 21
*Pick.,* 559, this question appears to have been distinctly pre-
sented for the first time in the Supreme Court of Massachu-
setts, and they also held that *trover* could be maintained.
The reasoning of the Court in this case is very clear and
satisfactory, and we think places the doctrine upon a founda-
tion which cannot be shaken.   Other authorities might be
cited in support of this view, but those referred to sufficiently
establish the rule ; which entirely accords with the definition
of *conversion* as given by Lord HOLT—" for what," he says,
" is a *conversion* but an assuming upon oneself the property
and right of disposing of another's goods." *Baldwin vs. Cole,*
6 *Mod., Rep.,* 212 ; *McCombie vs. Davies,* 6 *East.,* 510.

It is not controverted, that *trover* may be maintained for
*choses in action* as well as for other personal property.   It
therefore follows from what has been said, that this action
could have been maintained against the appellee, assuming
he was joint owner of the note with the appellant, if he had
either sold or destroyed it.   Certainly the surrender of it to
the Rockland and Venango Coal Oil Company, who were the
drawers of it to be by them cancelled or destroyed, (for that
was the purpose of the surrender,) if done without the autho-
rity of the appellant, is as much an assumption of the right
of disposing of another's property as could have resulted from
its sale or destruction.   This being so, the authority to make
the surrender became an important question of fact.   Testi-
mony upon this point had been produced by both of the
parties, and the instruction of the Court should not have
precluded the jury from passing upon it.   If the surrender
was made by the authority or with the consent of the appel-
lant, he was not entitled to recover, but if otherwise, and the
note was surrendered without authority, the action should
have been maintained.   But by the instruction of the Court
the consideration of this branch of the case was entirely with-
drawn from the jury, and their inquiry limited to the ques-
tion only of a joint ownership of the note—for the direction
given them is, that the plaintiff cannot recover if they find

" that the plaintiff and defendant are jointly interested in the note." Upon the proof in the case this instruction is manifestly error.

It is true, as was held in *Whiteford vs. Burkmyer & Adams,* 1 *Gill,* 127, that a party may segregate certain facts offered in proof, and ask an instruction upon them from the Court. But when so segregated the conclusion arrived at in the instruction must be consistent with the truth of the other facts offered in evidence. In other words, if found to be true they must support the theory of the prayer, *non obstante* the truth of other facts offered in proof; for if these latter, while not inconsistent with the truth of the facts upon which the instruction is based, would in conjunction with them establish in law a different theory and a different result, the prayer ought not to be granted. *Riggin vs. Patapsco Ins. Co.,* 7 *H. & J.,* 291; *Bosley vs. Chesapeake Ins. Co.,* 3 *G. & J.,* 462; *McTavish vs. Carroll,* 7 *Md.,* 366; *Adams vs. Capron,* 21 *Md.,* 205. In the present case the fact of the surrender of the note in question, without the authority of the appellant, is not inconsistent with a joint ownership by him and the appellee, but it is wholly inconsistent with the instruction of the Court directing the jury, that the plaintiff cannot recover if they shall find that he and the defendant are jointly interested in the note. Such a result does not follow, if it be true, as the instruction in the form in which it is granted must assume, that the surrender of the note to the Coal Oil Company was without authority, for, as we have seen, it is then no sufficient answer of the appellee, to the charge of a tortious conversion of the appellant's property, to say that he is not liable in *trover* simply because the thing converted was the subject-matter of a joint ownership between the parties.

For these reasons the judgment of the Court below will be reversed and a new trial directed.

*Judgment reversed and*
*new trial granted.*

(Decided 15th February, 1872.)