Scarborough *vs.* Scotten, *et al.*

*Judgment affirmed.*

(Decided 13th June, 1888.)

HUGH F. SCARBOROUGH *vs.* SAMUEL SCOTTEN, *et al.*,
Executors.

*Jurisdiction in Equity—Surrender of Notes and Single bills.*

Where notes and single bills were endorsed by the owner, the plaintiff, and delivered to the defendants' testator with the understanding and agreement that he would collect the same, and he died before collection was made, a Court of equity will interfere, and compel their return and delivery to the owner, his remedy at law being inadequate to give full relief.

APPEAL from the Circuit Court for Cecil County, in Equity.

Scarborough *vs.* Scotten, *et al.*

The case is stated in the opinion of the Court.

The cause was submitted on briefs to ALVEY, C. J., STONE, MILLER, IRVING, BRYAN, and McSHERRY, J.

*L. Marshall Haines*, and *Robert C. Thackery*, for the appellant.

*W. J. Warburton*, and *Albert Constable*, for the appellees.

IRVING, J., delivered the opinion of the Court.

This appeal is from a decree of the Circuit Court for Cecil County sustaining a demurrer to the appellant's bill in equity, and dismissing the same.

The appellant's bill charges that in the year 1880, being the owner of certain promissory notes and single bills, and desiring to have the same collected, he endorsed and delivered the same to William Scotten, the defendants' testator, with the understanding and agreement that he (William Scotten) would collect the same from the persons owing the promissory notes and single bills, and would pay over the amount so collected to Francina Scarborough, the wife of the appellant; that this agreement was made with the defendants' testator verbally at the time the promissory notes, and bills were endorsed to him. The bill then avers that after such endorsement and delivery, William Scotten died without having collected any of the notes and bills so endorsed to him, leaving a will by which the defendants were appointed executors, and who have duly qualified as such; that they have, as executors, those promissory notes and single bills now in their possession; that Francina Scarborough, appellant's wife, to whom the proceeds were to be paid when collected, has assigned to the complainant all her inte-

rest in the same and their proceeds; that the defendants have not collected the same nor made any effort to collect the same, and that their inaction is for the purpose of delaying and hindering the complainant in the collection of and receipt of the money due him thereon; that the complainant has demanded of the executors the delivery of the notes and single bills to him, but the defendants have refused and still refuse to surrender the same. The bill then charges that the complainant is without adequate remedy at law, and prays for a decree requiring the surrender of the promissory notes and single bills, copies of which are filed with the bill, and for such other relief as his case may require. By the demurrer, of course, *all the facts* alleged are admitted, and the only question for us to decide is whether the bill makes a case for equitable interference.

In sustaining the demurrer and dismissing the bill, the learned Judge of the Circuit Court simply says, " I am of opinion that the bill presents a case where the plaintiff has a certain, adequate and complete remedy at law. *Buzard vs. Houston*, 119 *U. S.*, 347; *Winner vs. Penniman*, 35 *Md.*, 163." In this view we do not concur.

Judge *Story* in his *Equity Jurisprudence*, 2 *vol., sec.* 703, (7*th Edition*,) says that a Court of equity will render remedial justice by decreeing the delivery up of *deeds and other instruments* of writing to those who are entitled to them. That learned author says it is a very ancient "head of equity jurisdiction." In the same section last cited he says, "the same doctrine applies to other instruments and securities, such as *bonds, negotiable instruments* and other evidences of property, which are improperly withheld from persons who have an equitable or legal interest in them; or who have a right to have them preserved. * * It is true that

an action of detinue or even of replevin might in some few cases lie and give the proper remedy if the thing could be found. But generally in actions at law damages only are recoverable; and such a remedy in most cases be wholly inadequate." Lord HARD-WICKE, in *Jackson vs. Butler*, 2 *Atkyn*, 306, decreed the surrender of a mortgage by a pawnee of it, who had received it from a person who had received it from the owner for the purpose of collecting the interest due on it, and had violated his duty and pawned it. In many other cases the principle has been applied. *Duke of Somerset vs. Cookson*, 1 *Lead. Cases in Equity*, (*Hare & Wallace*,) 771-2-3 *and* 4 *and* 5; *Fells vs. Read*, 3 *Ves.*, 70; *Nutbrown vs. Thornton*, 10 *Ves.*, 163.

There can be no doubt that the true ground of inter-ference by a Court of equity, is the inadequacy of any legal remedy to give *full relief*. That is the test. In this case the Court below thought the remedy at law was full and adequate; and the Court relies on *Pen-niman's Case*, 35 *Md.*, 163, and *Buzard vs. Houston*, 119 *U. S.*, 347. In the first mentioned case this Court decided that trover would lie in favor of one joint owner of a note against another joint owner who surrendered it to the maker for cancellation. The plaintiff saw fit to rely on the action of trover against his co-owner, and was awarded damages, which were easily and fully measurable. In *Houston's Case*, the Supreme Court merely decided that if the paper, sought to be restored, were restored, the damages recover-able for its breach would be the same as in an action for deceit, because of the fraudulent procurement of its surrender. *Full* relief in those cases could be secured at law. In this case, however, it would not seem that trover or replevin will secure full and ade-quate relief. Replevin would secure the surrender of the notes if the defendants saw fit to exhibit them

Scarborough *vs.* Scotten, *et al.*

to the officer and allowed him to take them; but the officer could not search their persons or the places where the defendants kept their money and securities. From the very nature of the things sought to be recovered, they could not be obtained by the officer against the will of the defendants; and having refused to deliver them upon demand as the demurrer admits the defendants have done, and for the reason assigned, it is plain the action of replevin would be nugatory for the recovery of the specific things sought, and if, after return of eloigned, the suit should proceed as an action for damages, the measure of damages would be the same as in trover, the value of the property taken and detained. In trover the measure of damages is the actual value of the property taken at the time of conversion. *Hepburn vs. Sewell,* 5 *Harr. & J.,* 212; *Herzberg vs. Adams,* 39 *Md.,* 309. In the present case the ascertainment of the value of the notes would involve inquiry into the solvency of fifteen persons, for if the parties were insolvent, the notes could not be worth what they promised to pay. The action of trover could, it may be conceded, be brought, but such action could not certainly give him *adequate* relief. In that action the measure of damages would be the actual value of the notes at the time of the taking of them by the defendants. (*Hepburn vs. Sewell,* 5 *H. & J.,* 212, and *Herzberg vs. Adams,* 39 *Md.,* 309.) As we have said, the solvency of fifteen persons would be the subject of inquiry, for the defendants in that action could not be bound to pay for these notes more than they were worth; and when the judgment was obtained and paid, by the decision of this Court in *Hepburn vs. Sewell,* the defendants would become the purchasers of the notes and the plaintiff's right to them would cease. It might very well be that some or even all of the makers of the notes were insolvent when the conversion of the notes by the defendants took place; but it is not a fair or reason-

Scarborough *vs.* Scotten, *et al.*

able presumption that they would always remain so; and the plaintiff in this case ought not to be forced to part with the notes for what they were actually worth when taken from him, when the possibility of larger recovery in future existed. He ought to have his notes and be allowed to bide his time for the collection thereof, as he might find practicable, if the makers should eventually become more prosperous, and pecuniarily more responsible. It is at least but equitable to allow him his own judgment and discretion whether to sue them now, and hold his judgment until there be an opportunity to make it, or defer as he pleases; and it is inequitable to force him in effect to sell them for what an action of trover would give him for them. Besides, in an action at law against the defendants the questions arising upon the solvency of so many persons, would involve tedious and protracted litigation, and questions of evidence to which he ought not to be subjected. Such questions could not arise between this appellant and his debtors in a suit between them. A suit at law to give full measure of relief should not involve such delay and expense, nor the uncertainty of a jury's decision on the proof. A legal remedy imposing such a hardship cannot be full, complete and ample. We think the bill, if its allegations be true, does disclose a case for equitable interference. There was error therefore in sustaining the demurrer and dismissing appellant's bill. The defendants ought to have been required to answer, and if the allegations of the bill are sustained by proof, the appellant should be accorded the relief he asks for. The decree must therefore be reversed, and the cause remanded to the end that the demurrer may be overruled and the case proceed regularly to decree as the proof may justify.

*Reversed, and remanded.*

(Decided 13th June, 1888.)