SAFE DEPOSIT & TRUST COMPANY, Executor,

*vs.*

WALTER F. COYLE, Administrator.

*Equity pleading: certainty and clearness.   Laches.   Executors
and administrators: executor de son tort; amenable
to jurisdiction of equity.*

A bill which recites with definite clearness the allegations of fact upon which relief is sought can not be successfully challenged for vagueness.                                    p. 348

An executor *de son tort* may be required to account in equity, as well as at law, and so also can the administrator of a deceased executor *de son tort*.                        pp. 348, 349

Equity has jurisdiction to decree the delivery of deeds and other instruments of writing to those entitled to them.   p. 349

In order to oust the jurisdiction of equity in such cases the remedy at law must be plain, complete and adequate.   p. 350

When the jurisdiction of courts at law and courts of equity is concurrent, the court which first takes jurisdiction of the matter may proceed in it without being ousted by the other.

p. 350

The application *vel non* of the principle of laches is controlled primarily by the facts and circumstances of each particular case.                                    pp. 350, 351

Delay alone does not warrant the imputation of laches, unless there has been coincident disadvantage to the other party; but lapse of time brought about by the conduct of an adverse party can not avail him.                        pp. 351, 352

*Decided December 5th, 1918.*

Appeal from the Circuit Court of Baltimore City. (SOPER, C. J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, PATTISON and URNER, JJ.

*Alfred S. Niles* and *George Whitelock* (with whom were *John B. Deming, W. Thomas Kemp, Carlyle Barton* and *Chester F. Morrow* on the brief), for the appellant.

*Henry H. Dinneen* (with whom were *Addison E. Mullikin, Roland R. Marchant* and *Edward F. Johnson* on the brief), for the appellee.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from an order overruling a demurrer filed by the appellant to the second amended bill of complaint of the appellee. The appellant is the executor of Kate E. Coyle, and the appellee is the administrator of Terrence W. Coyle, her husband. Demurrers to the original bill and to an amended bill were sustained and the second amended bill was filed with the leave of the Court. As the sufficiency of the latter is what we are called upon to determine we will have reference to it, unless otherwise stated, when we speak of "the bill" or "the bill of complaint."

The bill alleges that Dr. Terrence W. Coyle, a resident of Baltimore City, died on the 19th of January, 1914, possessed of a large estate consisting of personal property, and left surviving him as his only distributees entitled to share in his estate his wife, Kate E. Coyle, three nephews, two nieces and one grand-nephew. All of them lived in Baltimore City, excepting one niece who lived in New York, and one nephew, Walter Coyle, who resided in Baltimore County, and on the 6th of September, 1917, the latter was appointed by the Orphans' Court of Baltimore City administrator of Dr. Terrence W. Coyle. Mrs. Coyle died July 19, 1917, leaving a last will and testament, dated August 1, 1916, by which she left a large number of legacies and appointed the Safe Deposit & Trust Company of Baltimore her executor. As shown by the inventory filed in the Orphan's Court of Baltimore, she left bonds appraised at $86,061.25, jewelry, household furniture and an automobile, in addition to cash in the house—the whole amounting to $91,049.77.

It is further alleged that Dr. Coyle was a prominent and successful dentist, having a large practice, and that he so invested his surplus income that at the time of his death he was possessed of a large estate; that he owned a property on North Eutaw street for which he paid $5,100 and sold it on March 2, 1906, for $10,000; that he invested the greater part of his money in stocks and bonds, which investments were made through the brokerage firms of Sutton & Strother, and Strother, Brogden & Co., both of Baltimore—the latter being the successor of the former; that the stocks and bonds so purchased were from time to time sold by those firms and others were purchased with the proceeds, so that no particular certificates of stocks or bonds remained in possession of Dr. Coyle for any great length of time, but were constantly being replaced by others; that as a result of the investments and reinvestments he was at his death possessed of stocks and bonds of the approximate value of $86,000.00; that the plaintiff requested of Strother, Brogden & Co. an account of the financial transactions of his intestate and was informed that the records were in their possession and complete in every detail, but that they would not furnish the information without an order of Court, wherefore he was unable to furnish the Court with the numbers and character of the stocks and bonds belonging to his infestate at the time of his death.

It is then charged that at the death of the plaintiff's intestate his widow, Kate E. Coyle, "unlawfully, wrongfully and fraudulently seized and took possession of the aforesaid bonds," and converted the same to her own uses and purposes, without taking out letters of administration upon her husband's estate, or making any distribution of his personal estate; that "such seizure was for the purpose of depriving those entitled to share the estate with her of their interest therein, and that such action on her part was caused by an unwarranted dislike for the nieces and nephew (mentioned above) of her husband, and by an overpowering desire to see the nieces and nephews deprived of their interest in her

husband's estate;" that since the death of his intestate, Kate
E. Coyle, through Strother, Brogden & Co. has sold many
of the stocks and bonds purchased by her husband, and a
part of his estate at the time of his death, and bought other
stocks and bonds with the proceeds thereof, which were sub-
stituted for those sold; that upon the death of Kate E.
Coyle her executor, the defendant (appellant), came into
possession of the aforesaid stocks and bonds and returned
them to the Orphans' Court as a part of her estate in the
inventory, a copy of which is filed; that the stocks and bonds
therein listed, the appraised value being $86,061.25, are a
part of the estate of his intestate and he is entitled to the
same for purposes of distribution.

By the sixth paragraph of the bill it is alleged that with-
in ten days after the death of Dr. Coyle the plaintiff, Walter
Coyle, called upon Kate E. Coyle, who, unknown to him,
was then in possession of the stocks and bonds belonging to
her husband, and thereinbefore referred to, and inquired of
her concerning the affairs of her husband, more particularly
about his property, and she, knowing that her husband died
possessed of a large personal estate, falsely stated that he
left practically nothing, but that his nieces and nephews
would receive anything to which they might be entitled; that
about three months afterwards the plaintiff's individual
agent made inquiry at the Orphans' Court of Baltimore City
as to whether Dr. Coyle, who resided in Baltimore City at
the time of his death, left a will and was informed that no
such will was of record. That paragraph then concludes as
follows:

> "Upon the receipt of this information your orator,
> relying absolutely upon the aforesaid statements of
> Mrs. Coyle, and having no knowledge of the falsity
> of the information given him by the said Kate E.
> Coyle, or anything to place him upon notice as to its
> falsity, and the fact that no will of his intestate had
> been placed on record, believed on the strength of these
> statements that Dr. Coyle died without being possessed

of any property whatever, and your orator continued to so believe until August, 1917, after the filing of the inventory in the estate of Kate E. Coyle by the Safe Deposit & Trust Company, executor, when he first learned of the large amount of her estate, and then for the first time ascertained upon investigation that Dr. Coyle had left a large estate; that from the death of her husband on or about January 19, 1914, until her death on or about July 19, 1917, Kate E. Coyle, unknown to your orator and to the distributees of your orator's intestate, continued to enjoy the profits and income from the aforementioned stocks and bonds, the property of her husband's estate, which she has unlawfully appropriated to her own use, and to treat the same as her own property."

The bill then refers to the will of Kate E. Coyle, a copy of which is filed, and alleges that the executor is about to distribute the property bequeathed to the legatees named. The prayers in the bill are (1) That the Court assume jurisdiction over the estate and administer it; (2) That the executor of Kate E. Coyle be ordered to deliver to the plaintiff the property and securities now held by it and belonging to the estate of Dr. Coyle; (3) That an account be taken under the direction of the Court of all the dividends and interest received by Kate E. Coyle and her executor from the said stocks and bonds, and that the executor be decreed to pay the plaintiff all sums due by her and her estate to that of plaintiff's intestate on account of said dividends and interest; (4) That pending the determination of the amount due the executor of Kate E. Coyle be enjoined from making distributions of the estate of Kate E. Coyle, and (5) For general relief.

The defendant filed as grounds for the demurrer, (1) that the plaintiff has not stated such a case as entitles him to relief in equity; (2) laches; (3) that if plaintiff had any remedy it is at law and not in equity and the Court had no jurisdiction in the premises; (4) that the plaintiff's allega-

tions are so vague and indefinite that the defendant is not called upon to answer. An additional demurrer was filed to the paragraph relating to the real estate on North Eutaw street on the ground that the plaintiff did not file certified copies of the deeds therein referred to or of a mortgage for a part of the purchase money, which mortgage was given to Kate E. Coyle. Copies of the deeds and mortgage were filed with the demurrer.

We have had no difficulty about the grounds for demurrer, excepting that of laches. The allegations of the bill are not vague and indefinite, but are as certain as they could well be and the bill explains why the plaintiff can not be more definite. A copy of the inventory which gives a list of the bonds, etc., sought to be reached, was filed. This bill is unlike that in *Rice* v. *Donald*, 97 Md. 396, relied on by the appellant. Nor do we think that under the authorities there can be any serious question about the right of a Court of equity to grant relief in cases of this kind, if the facts justify such relief. The bill shows that Mrs. Coyle claimed title to the bonds, and therefore her executor could not have been proceeded against under Section 243 of Article 93 of the Code, *Fowler* v. *Brady,* 110 Md. 204, 207, and cases there cited, and there is no other provision in our testamentary law which would be sufficient. Then the allegations in the bill were ample to show that, if true, she was an executrix *de son tort.* As such she could have been proceeded against in equity as well as at law. *Baumgartner* v. *Haas,* 68 Md. 32, which followed *Bentley* v. *Cowman,* 6 G. & J. 152. In the latter case no accounting of the personal estate was asked for, and no charge made that the heirs (the persons there involved) were executors *de son tort,* but the Court through JUDGE DORSEY held that, "although there was no formal prayer for an account in the bill, yet the facts authorizing it are sufficiently charged, and the prayer for general relief entitles the complainants to such an account." Then in *Baumgartner* v. *Haas,* the Court, referring to *Bentley* v. *Cowman,*

said: "This case very clearly recognizes the right to call an executor *de son tort* to an account in a Court of equity, as well as by suit at law. In many cases he can be effectually reached only in equity." That seems to be the general rule, as shown by reference to 11 R. C. L. Sec. 570, p. 462, where it is said: "Actions against executors *de son tort* may usually be brought either at law or in equity." Whether or not a person who administers upon the estate of an executor *de son tort* thereby makes himself liable as such executor of the original decedent has been both asserted and denied, 18 *Cyc.* 1359, but there would seem to be no doubt that the executor or administrator of an executor *de son tort* can be called to account in equity as executor or administrator of his decedent. If that were not so, there would be no way of obtaining relief for the action of an executor *de son tort* who died before a suit in equity or action at law against him was brought, or ended. In this case the bill prays that the defendant be required to surrender and deliver the property and securities now held by it and belonging to the estate of Dr. Coyle, and that an account be taken of all the dividends and interest received. It is therefore unnecessary to rely on the prayer for general relief as was done in *Bentley* v. *Cowman.*

This bill also asks for an injunction, but in addition to what we have said, there is ample authority in this State for holding that a Court of equity can give relief in such cases. In *Scarborough* v. *Scotten,* 69 Md. 137, the Court referred to 2 *Story's Eq. Juris.* (7th Ed.) sec. 703, where it was said that a Court of equity will render remedial justice by decreeing the delivery up of deeds and other instruments of writing to those who are entitled to them, and quoted from that section that "the same doctrine applies to other instruments and securities, such as bonds, negotiable instruments and other evidences of property, which are improperly withheld from persons who have an equitable or legal interest in them; or who have a right to have them

preserved. * * * It is true that an action of *detinue* or even replevin might in some few cases lie and give the proper remedy if the thing could be found. But generally in actions at law damages only are recoverable and such a remedy in most cases be wholly inadequate." Judge Irving then went on to refer to cases where trover or replevin would lie and might be sufficient, but sustained the right to proceed in equity because the legal remedy was inadequate to give *full* relief. Trover in some cases might be deemed sufficient, but the rule in Maryland is that the damages allowed in that action are for the value of the property at the time of the conversion, with interest up to the date of the verdict. If a judgment for damages in such cases can not for any reason be collected, then the plaintiff might lose his property and his money, if he is to be confined to an action of trover, and at any rate if the property becomes more valuable, he is confined in trover to the value at the time of the conversion. So in replevin there are difficulties which may be avoided in equity. In case of this kind, where the defendants' testatrix was entitled to a distribution of one-half of her husband's estate, and according to the bill the original securities, or many of them, have been sold and others substituted for them, it would seem to be peculiarly appropriate for a Court of equity to take jurisdiction.

We will not prolong this opinion by discussing the cases which hold that equity has jurisdiction in the administration of estates, or those which hold that when equity has concurrent jurisdiction with courts of law the Court which first takes jurisdiction has the right to proceed, or those on like questions, as we are of the opinion, for reasons given, that neither the first, third or fourth ground for the demurrer was sufficient to sustain the demurrer. Coming then to the question of laches, what, if anything, does the bill show to excuse the delay?

One of the difficulties in passing on the question of laches is that every case is governed chiefly by its own circumstances,

and something that may be controlling in one case may not necessarily be so in another. The expression of LORD CAMDEN in *Smith* v. *Clay*, 3 Bro. Ch. 639, that "Nothing can call forth this Court into activity but conscience, good faith and reasonable diligence. When these are wanting, the Court is passive and does nothing. Laches and neglect are always discountenanced"—is frequently used by courts, including this one, as a guide in approaching the question. While time is one of the elements to be considered in passing on the question it is not necessarily the controlling one. It is not always mere delay that will cause a Court of equity to deny a plaintiff relief, but usually it is delay plus disadvantage to the other party, caused by the delay. That may be produced by different causes, but one as frequently referred to as any other is an intervening death. JUDGE PHELPS in sec. 263 of his *Juridical Equity,* gives as a circumstance attending delay which may characterize a case of laches: "The intervention of an important death, especially when the circumstance is colored by indications of 'lying by,'" but he adds: "The intervention of death is of less consequence when the death is one that disables the plaintiff's testimony, or when the invalidity of the transaction depends upon its intrinsic nature rather than upon proof *aliunde,* or when the material discovery was not made until after the individual's death." The fact is that since questions of this kind have been so frequently raised by demurrer in the lower Court, with the right of appeal to this Court, it has become too much a matter of pleading, and sometimes the Court cannot help being impressed with the feeling that more is said in a bill than can likely be proved, but in the consideration of the demurrer we must accept the allegations of fact which are well pleaded and relevant as true.

In the bill now before us, as will be seen above, it is specifically alleged that Dr. Coyle "was at the time of his death possessed of a large personal estate consisting of such stocks and bonds of the approximate value of" $86,000.00;

"that his widow, unlawfully, wrongfully and fraudulently seized and took possession of the bonds and converted the same to her own uses and purposes;" that the inventory of her estate showed that after her death there were stocks and bonds listed of the appraised value of $86,061.25. The allegations are that she through her brokers from time to time sold those which belonged to her husband and the proceeds were invested in those included in the inventory. The bill undoubtedly makes out a case against her estate, if the facts therein alleged are true, unless the plaintiff is precluded by laches, and after giving the matter thorough consideration we are forced to the conclusion that it does sufficiently explain the delay to require it to be answered. If it be true that Walter Coyle called upon his aunt by marriage for information in reference to his uncle's estate and she told him what he says she told him, and he relied upon her statements, and had no knowledge of their falsity, or anything to place him upon notice, as the bill alleges and the demurrer admits, then his delay was excusable. He also alleges that he continued to believe what she told him and the other matters until the inventory in her estate was filed. What we have quoted from the sixth paragraph, in connection with what we have referred to in other parts of the bill, is certainly sufficient to require an answer.

Mrs. Coyle is now dead, but if it be true that she by false statements prevented the proceeding from being instituted in her lifetime and that it was only after her death that the facts were ascertained, she was responsible for the delay. "Lapse of time brought about by the conduct of an adverse party cannot avail him." 10 R. C. L. 404, sec. 151. Moreover, if the suit had been brought at once or in her lifetime by the executor of her husband, she would not have been competent to testify as to any transaction had with, or statement made by the testator, intestate, ancestor," etc. Sec. 3 of Article 35 of Code. In considering the effect of the death of the adverse party in such cases, it is proper to con-

sider whether if living he or she would be a competent witness. If, as is intimated by the appellant in his brief, Mrs. Coyle obtained the bonds and stocks as gifts from her husband, she could not have testified to them. It is true that if she was still living she might have given valuable information to her counsel which would have been of service in making the defense, but we think that if the allegations in the bill are true, as the demurrer admits they are, her death is not sufficient to sustain the demurrer on the ground of laches.

As Mrs. Coyle is dead, the plaintiff may not be a competent witness to prove any transactions with her or statements made by her, but we can not assume that there will not be other evidence which is competent. It seems to us that it would be a dangerous doctrine to announce, if we held that notwithstanding the allegations made in this bill the defendant was not called upon to answer, but the plaintiff should be held to the strictest proof, for it may be that Dr. Coyle did give the bonds and stocks which he owned to his wife, in a way that made it a valid gift, but there may be difficulty in proving that if it becomes necessary. If the evidence offered by the plaintiff does not excuse the delay, then laches may still be a sufficient defense, as we are simply determining the question on the demurrer.

The objection to the third paragraph on account of the absence of the deeds referred to therein was well taken, but as the defendant supplied them by filing them with the demurrer the question does not seem to be at all material or one that requires any action by us.

> *Order affirmed, with costs to the appellee, and
> cause remanded in order that the defendant
> may file an answer within such time as the
> lower Court may allow.*