MARY LOUISE SPANGLER *v.* DAN A. SPROSTY
BAG COMPANY ET AL.

[No. 34, January Term, 1944.]

*Decided March 24, 1944.*

The cause was argued before SLOAN, C. J., DELAPLAINE, COLLINS, MARBURY, GRASON, MELVIN, and BAILEY, JJ.

*Isaac Lobe Straus*, with whom was *Isidor Roman* on the brief, for the appellant.

*J. Paul Schmidt,* with whom were *Leonard Weinberg* and *Weinberg & Green* on the brief, for the appellees.

BAILEY, J., delivered the opinion of the Court.

This is an appeal by Mary Louise Hall Spangler from an order of the Circuit Court for Baltimore County, in equity, overruling her demurrer to the bill of complaint of The Dan A. Sprosty Bag Company, a body corporate, and Mary Louise Sprosty and John B. Pymer, executors of the last will and testament of Dan A. Sprosty, deceased, filed against her and other defendants.

The bill of complaint alleges that The Dan A. Sprosty Bag Company is a Maryland corporation, with its principal office in Baltimore City; that it is engaged in the business of buying, selling, manufacturing and renovating bags; that Dan A. Sprosty was, in his lifetime, the owner of all common stock and a majority of the preferred stock of the corporation and was in full and absolute control of the management of its business; that Sprosty died on July 25, 1943, leaving a will naming Mary Louise Sprosty and John B. Pymer his executors and that letters testamentary have been granted to them by the Orphans' Court of Baltimore City; that Mary Louise Hall Spangler, also known as Louise Hall Spangler and L. H. Spangler, a resident of Baltimore County, was, prior to the death of Sprosty, carried on the payroll of the corporation as its employee and claimed to be its representative in the purchase and sale of bags; that after the death of Sprosty, the officers and directors of the company and the executors caused an examination to be made of the accounts of the company and thereby discovered that large sums of money and property had been fraudulently, illegally, unlawfully and wrongfully diverted from said business and had been delivered to, placed in the possession of or titled in the name of the defendant, Mary Louise Hall Spangler, as a result of her fraudulent, illegal, unlawful and wrongful acts by the

exercise of threats, coercion, undue influence, control and dominion over Sprosty, whereby he was compelled and forced to join with her in the diversion of said funds and property; that beginning in the month of April, 1942, and continuing until the month of June, 1943, the total sum of $37,635.15 appears to have been so diverted, but that the plaintiffs believe funds, money and property of the company in a substantially greater amount have been also diverted to her, the exact amount thereof being unknown to them; that early in 1942 Sprosty became sick with a serious heart ailment and that from that time until his death he was almost constantly under the care of physicians and was frequently a patient in various hospitals; that he became mentally unstable and that at times he was not mentally capable of transacting business; that while he was in this condition the defendant, Spangler, exercised a dominant control over him and coerced him into diverting the said funds by threats of legal proceedings and of exposure of his illegal acts; that the only source from which Sprosty could obtain funds for such diversion was from the funds of the company; that the manner in which the said funds were diverted to her was as follows:

"The said Dan A. Sprosty, now deceased, with the full knowledge thereof on the part of the defendant, Mary Louise Hall Spangler, would cause to be prepared, fictitious memorandum invoices, purporting to indicate that one L. H. Spangler of the City or Town of Tyrone, in the State of Pennsylvania, had sold to the plaintiff, the Dan A. Sprosty Bag Company, a certain quantity of bags and scrap and thereupon the check of the plaintiff, The Dan A. Sprosty Bag Company, would be issued to the defendant, the said Mary Louise Hall Spangler, but designated as L. H. Spangler in the check, for a portion or all of the amount shown to be due on said fictitious invoices, and where a check was issued for only part of the amount shown to be due, a subsequent check would be issued for the balance.

That the merchandise alleged to have been sold to the plaintiff, The Dan A. Sprosty Bag Company, as set forth in said fictitious invoices, was never received by it and no consideration was ever received by the plaintiff, The Dan A. Sprosty Bag Company, for any of the checks drawn purporting to be in payment for merchandise set forth in said fictitious invoices.

"That the defendant, Mary Louise Hall Spangler, was ordered by the said Dan A. Sprosty to be placed on the payroll of the plaintiff, The Dan A. Sprosty Bag Company, at a salary of Two Hundred Eight Dollars and Thirty-four Cents ($208.34) a month, for which payments the defendant, Mary Louise Hall Spangler, also known as Louise Hall Spangler and L. H. Spangler, performed no services whatsoever for, or for the benefit of the plaintiff, The Dan A. Sprosty Bag Company.

"That all of the aforegoing payments of funds of the plaintiff, The Dan A. Sprosty Bag Company, whereby said funds were diverted to and fraudulently, illegally, unlawfully and wrongfully transferred to the defendant, Mary Louise Hall Spangler, also known as Louise Hall Spangler and L. H. Spangler, which are known to the plaintiffs, were made by checks of the plaintiff, The Dan A. Sprosty Bag Company, drawn on its funds on deposit with the National Marine Bank and said checks were signed by the said Dan A. Sprosty, in his capacity as president of the plaintiff, The Dan A. Sprosty Bag Company. That the defendant, Mary Louise Hall Spangler, also known as Louise Hall Spangler and L. H. Spangler, when she received said checks, well knew that the funds so diverted and transferred to her were the funds of the plaintiff, The Dan A. Sprosty Bag Company, and said defendant further well knew and had full notice that no consideration passed from her to the plaintiff, The Dan A. Sprosty Bag Company, for any and all of said payments."

The bill then alleges that the defendant, Spangler, has disposed of and deposited the said funds as fol-

lows: Purchased the leasehold interest in property located at 618 Highland Avenue, Towson; purchased the fee simple interest in other property in Baltimore County, known as Lot No. 9, Normal Terrace; deposited a substantial portion thereof in checking and savings accounts with the defendants, Maryland Trust Company, The Towson National Bank, and The Second National Bank of Towson; deposited a substantial portion thereof in safe deposit boxes or vaults, registered in her name only or jointly with others, under the custody and control of the aforementioned banks; deposited a substantial portion thereof in The Allison East End Trust Company of Harrisburg, Pennsylvania, and First Blair County National Bank of Tyrone, Pennsylvania, and in other banking institutions whose names are unknown to the plaintiffs; that Sprosty, from the funds of the company, purchased a Buick automobile for the sum of $1,566.67 and caused the same to be registered in the name of the defendant, Spangler; that the plaintiff company is entitled to have all of said funds, money and property returned to it, whenever the same may be found and in whatever form the same may now be invested; that the plaintiffs are not fully informed of all the funds, money and property so diverted and transferred to the defendant, Spangler, from the company and of the disposition made by her of it, and therefore submit that they are entitled to a full accounting and discovery thereof from the defendants; that the defendant, Spangler, is now in full control and possession of said funds and property, and that the plaintiffs believe that the defendant, Spangler, will attempt to dispose of the same to bona fide purchasers or to secret the same or carry it beyond the jurisdiction of the court, unless she is restrained and enjoined from so doing; and that they are entitled to have the defendant, Spangler, declared to hold the title to the Buick automobile, as well as all other funds, money and property above referred to, as trustee for the plaintiff company and that she should be restrained

from selling, assigning, transferring, conveying or encumbering said property pending these proceedings.

The relief prayed for is as follows: (1) That the defendant, Spangler, account for all funds, money and property of the plaintiff company diverted and transferred to her; (2) that she be ordered and directed to make full and complete discovery of all funds, money and property received by her from the plaintiff company; (3) that the court decree that all the funds, money and property which the court may adjudge and determine to have been fraudulently, illegally, unlawfully and wrongfully transferred to her, and all property titled in her name, purchased with such funds, is the property of the plaintiff company, and direct her to pay, transfer, assign, convey and deliver the same to the plaintiff company, and, upon her failure so to do, declare the claims of the plaintiff company to be liens upon the property now titled in her name, and appoint trustee to sell said property and apply the proceeds in settlement of such claims or to assign, transfer and convey said funds, money and property directly to the plaintiff company; (4) that she be enjoined and restrained, pending these proceedings, from assigning, transferring, conveying, encumbering or in any manner disposing of said funds, money and property; (5) that, pending these proceedings, the defendants, Maryland Trust Company, The Second National Bank of Towson and The Towson National Bank, be enjoined and restrained from permitting the defendant, Spangler, to withdraw or remove any funds, money or property now in their possession or custody or over which they now exercise any form of control; (6) that the said banks be ordered and directed to make discovery of all accounts, both checking and savings, and of all safe deposit boxes or vaults maintained with them by her, either individually or jointly with others, or of any other funds, money or property in their possession, custody or control; (7) that the defendant, W. Lee Elgin, Commissioner of Motor Vehicles, pend-

ing these proceedings, be enjoined from permitting the assignment or transfer of the title to said Buick automobile; (8) and for general relief.

There were filed as exhibits with the bill a certified copy of the will of Sprosty, a certificate of letters testamentary granted to his executors, a certified copy of the assignment for the leasehold interest in the property at 618 Highland Avenue, and a certified copy of the deed for Lot No. 9, Normal Terrace.

The defendant, Spangler, demurred to the whole bill and to each and every paragraph thereof. The chancellor overruled her demurrer and she has appealed. The question for our decision is the sufficiency of the bill of complaint.

The grounds for her demurrer may be conveniently grouped as follows:

(1) That the bill does not sufficiently allege specific instances of fraud to warrant the relief it prays.

(2) That the plaintiffs have an adequate remedy at law.

(3) That the alleged fictitious invoices have not been filed as exhibits with the bill.

(4) That the plaintiff company is guilty of laches.

(5) That the bill is multifarious as to subject matter and parties defendant.

(6) That there is a misjoinder of plaintiffs.

The basis of all the relief sought in this case is the fraud of the defendant, Spangler. It is the settled rule that a bill seeking any relief on the ground of fraud must distinctly state the particular facts and circumstances constituting the fraud and the facts so stated must be sufficient in themselves to show that the conduct complained of was fraudulent. General charges of fraud or that acts were fraudulently committed are of no avail, unaccompanied by statements of specific facts amounting to fraud; and on the other hand, if there be sufficient facts stated to disclose fraud, it is unnecessary to charge in express terms that the acts complained of were fraudulent. *Miller's Equity*

*Procedure,* Sec. 93, page 118; 37 *C. J. S., Fraud,* Sec. 78,, pp. 370, 371; *Reeder v. Lanahan,* 111 Md. 372, 74 A. 575; *Boyd v. Shirk,* 125 Md. 175, 93 A. 417; *Fried v. Burk,* 128 Md. 548, 97 A. 909; *Coffman v. Publishing Co.,* 167 Md. 275, 173 A. 248; *State Founders, Inc. v. Oliver,* 165 Md. 360, 169 A. 59.

When these principles are applied to the bill in this case it is apparent that the requirements have been met. That portion of the bill which we have quoted above sets out with sufficient particularity the facts which constitute the fraud. We do not see how they could be stated with more particularity. They give the defendant ample notice of the plaintiffs' claims and she will have a full opportunity to deny or explain them. She has knowledge of the charges which she is compelled to meet. This is the requirement of good pleading.

The second ground of the demurrer is that the plaintiffs have relief at law in an action of *assumpsit* on the common count for money had and received, and, therefore equity is without jurisdiction to entertain the suit. This contention ignores the allegations of the bill with respect to diversions of funds of the plaintiff company in excess of the sum of $37,635.15 and, from the fundamental nature of the facts presented, the procedure requisite for full and adequate relief. The statement of this Court in *Turk v. Grossman,* 176 Md. 644, 6 A. 2d 639, is singularly appropriate to the instant case. At page 667 of 176 Md., at page 651 of 6 A. 2d, the Court says: "The gravamen of these facts is fraud, whose redress is peculiarly of equitable cognizance. Furthermore, the procedure indicated is for a discovery and accounting in matters which require for their resolution the flexible and adaptive remedies of equity rather than the more rigid and limited processes of the law."

Nor is the jurisdiction of equity affected by the provisions for discovery in actions of law, contained in Sections 106 and 107, of Article 75, Code of 1939. *Zalis v. Orman,* 175 Md. 100, 199 A. 877.

And it has been held that the existence of a right on the part of the plaintiff to bring an action at law for the enforcement of his claim would not be sufficient reason for sustaining a demurrer to the bill, if there is any ground upon which relief in equity may be invoked. *Legum v. Campbell,* 149 Md. 148, 131 A. 147.

It is our conclusion that the bill sets forth facts entitling the plaintiff company to equitable relief and that, upon these facts, its remedy at law would be inadequate. See also Sec. 92, Art. 16, Code, 1939, and *Universial Realty Corporation v. Felser,* 179 Md. 635, 22 A. 2d 448, and cases there cited.

It is urged that the demurrer should have been sustained because the plaintiff did not file the alleged fictitious invoices as exhibits with the bill. As authority for this contention we are referred to *Miller's Equity Procedure,* Sec. 582, pp. 689-691, where it is stated: "The general rule with respect to exhibits is that where the right to an injunction is based upon a written instrument in the possession of the plaintiff, or to which he has ready access, the instrument itself, or a copy, ought to be filed with the bill, in order that the court may see whether the plaintiff is entitled to the relief prayed." The reason for the rule is that "if the facts rest in record or depend upon written evidence, such documentary evidence as constitutes *prima facie* evidence of their truth, as office copies or short copies and docket entries, are required in proof of such facts. It is not for the plaintiff to allege his construction of a written document, or its effect, and require the court to accept his allegation as true; the document itself should be produced." If the relief prayed depends upon the construction of written documents, the rule requires their production with the bill, but that is not the situation in the instant case. The fraud alleged in the bill consists of the obtaining by the defendant, Spangler, of money belonging to the plaintiff company, by means of invoices for fictitious purchases by the company from her. The invoice is but one step in the fraudulent scheme. It is regular on its face and its

spurious character cannot be determined until extrinsic evidence has been offered relative thereto. The same is true of the checks issued by the company in purported payment of the materials listed on the invoices. The fraudulent character of the scheme would not be more apparent if all the invoices and checks were filed as exhibits with the bill. They have evidential value but they are not necessary exhibits, even for obtaining the relief by injunction prayed for in the bill. The case of *Miller v. Baltimore County Marble Co.*, 52 Md. 642, relied on by the appellant, holds that even where the failure to file the necessary exhibits is fatal so far as relief by injunction is concerned, it does not in any manner affect the general relief to which the plaintiff is entitled under all the allegations of his bill. Where written documents are only items of proof or links in the chain, they are not necessary exhibits. *Sears v. Barker*, 155 Md. 323, 141 A. 908.

The argument that the plaintiff company has been guilty of laches is without merit. The bill alleges that the diversions took place from April, 1942, until the death of Sprosty on July 25, 1943, and that they were not discovered until an examination and audit of the affairs of the company were made after his death. The bill was filed on August 25, 1943, exactly two months after his death. We think that the directors of the company have acted with reasonable promptness. In the case of *Boehm v. Boehm*, 182 Md. 254, 270, 34 A. 2d 447, 454, we considered the question of laches and quoted from *Pomeroy's Equity Jurisprudence*, Vol. 4, par. 1440, as follows:

"Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as parties are the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no steps to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be

then enforced, delay becomes inequitable, and operates as estoppel against the assertion of the right."

There was no delay in this case, but even if there had been, it has worked no disadvantage to the appellant.

We will consider next the question of multifariousness of the bill. In *Miller's Equity Procedure*, Sec. 110, p. 139, the rule defining multifariousness is stated as follows: "In a somewhat broader aspect of the rule, it is held that the objection of multifariousness ought only to apply where the case of each defendant is entirely distinct from that of the other defendants; and it is not indispensable that all the parties should have an interest in all the matters contained in the bill. It will be sufficient if each party have an interest in some material matters in the suit and that they are connected with the others." This rule was approved by this Court in the case of *Figinski v. Modrak,* 151 Md. 140, 134 A. 130. And in *Bank v. Bank,* 180 Md. 254, 23 A. 2d 700, 703, it was said that the rule "must be applied to the facts of each particular case in the light of the general principles regulating singleness in pleading which forbids blending in the same suit entirely distinct and separate matters relating to different parties."

If we apply the above principles to this case, it is at once apparent that the bill is not multifarious. The primary purpose of the bill is to recover for the plaintiff company money and property which the principal defendant, Spangler, has fraudulently obtained. It is not alleged that the other defendants were parties to the fraud, but the relief sought against them is only to recover for the benefit of the plaintiff company that portion of its money or funds which she has placed in their custody and control. They do not have an interest in all the matters contained in the bill, but they do each have an interest in some material matter in the suit. Each defendant is thus connected with the other defendants. All the relief sought in this case is based upon one cause of action, namely, the fraud of the defendant, Spangler. It is against her that the relief is primarily sought. As to the

other defendants, the relief sought is ancillary, but necessary for full and adequate relief to the plaintiff company. There is not in this bill the compounding of distinct matters, the blending of distinct demands or the improper joining of independent matters, which have always been regarded as vices rendering a bill multifarious. *Miller's Equity Procedure*, Sec. 104, p. 133; *Oakford Realty Co. v. Boarman*, 156 Md. 65, 143 A. 644; *Atlantic Lumber Corp. v. Waxman*, 162 Md. 191, 159 A. 593.

We therefore hold that the bill states a good cause of action for all the equitable relief prayed as against the defendants in so far as the plaintiff company is concerned.

But the executors of Sprosty have been joined as parties plaintiff to the bill. This is, in our opinion, a fatal misjoinder. The allegations of the bill are that all of the money, funds and property diverted to the defendants, Spangler, were the property of the plaintiff company and not of Sprosty, individually. If Sprosty were living he would have no right to maintain a suit in his own name against this defendant to recover the company's property. And certainly his executors can have no greater right than he would have. There can be no doubt of his liability to the plaintiff company upon the allegations of the bill, and his executors would have been proper parties defendant. In the case of *Fried v. Burk, supra*, it was held that, where a bill was filed by the plaintiff in two capacities, one as executrix of the estate of her husband, and the other in her individual capacity, there was a direct conflict between the two rights, and that there was a fatal misjoinder of parties plaintiff. In the instant case the executors have no claim against the defendants, but on the contrary, the other plaintiff has a claim against them, which, as stated in their brief, they have admitted. Is there not here a direct conflict of interests? We hold that there is and that, because of their joinder as plaintiffs in the bill, the demurrer should have been

sustained. If they are stricken from the bill, it will then state a good cause of action of the plaintiff company against all the defendants named therein.

For the reason stated we shall reverse the order of the chancellor overruling the demurrer, but shall remand the case in order that the plaintiff, The Dan A. Sprosty Bag Company, if it so elects, may have an opportunity to amend its bill in the court below.

> *Order reversed and cause remanded, as indicated above, the costs to be paid, one-half by the appellant, and one-half by the appellees, Mary Louise Sprosty and John B. Pymer, executors of the last will and testament of Dan A. Sprosty, deceased.*