BENJAMIN L. BERMAN *v.* MARY FEAR LECKNER, ET AL.

[No. 105, October Term, 1946.]

*Decided April 18, 1947.*

324

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Joseph Loeffler* for the appellant.

*Edward L. Ward,* with whom was *J. Calvin Carney* on the brief for the appellees.

HENDERSON, J., delivered the opinion of the Court.

The appellant, administrator *d. b. n.* of the estate of Boston Fear, deceased, filed a bill of complaint in the Circuit Court No. 2 of Baltimore City, on May 10, 1946, for the discovery and surrender of personal property belonging to the estate, alleged to have been appropriated by the appellees, children of the decedent. The chancellor sustained demurrers to the bill, and dismissed the bill without leave to amend.

The bill recites that Boston Fear died intestate on April 11, 1918, leaving valuable personal property consisting, in addition to furniture and ordinary household articles, of valuable paintings and antiques; that his son, George Fear, was appointed administrator by the Orphans' Court of Baltimore City on July 25, 1919, but never filed an inventory or an administration account. After the death of George Fear in 1945 the appellant was appointed administrator *d. b. n.* on April 17, 1945. At the time of the death of Boston Fear, he left surviv-

ing him nine children, and the widow and three infant children of a deceased child, Boston Fear, Jr. Since that time, two of the children of Boston Fear, Herbert R. Fear and George Fear, have died; their personal representatives or heirs are not made parties to the suit. The bill alleges that immediately after the death of Boston Fear, his nine children wrongfully appropriated his personal property and distributed it among themselves, to the exclusion of the family of the deceased child. The bill lists a number of these articles, and prays discovery of others; it refers particularly to a large oil painting of "Queen Anne," which is alleged to be extremely valuable, "and is reputed to be worth the sum of $300,000.00," in the possession of Mary Fear Leckner. The bill further alleges that George and Herbert Fear in their life-time disposed of the articles they appropriated to the other children for "insignificant considerations."

The bill alleges that the defendants maintained "a solid and unbreakable front against the leakage of any information whatsoever that might disclose the illegal, wrongful and fraudulent device by which they acquired possession of the aforesaid personal property," until shortly prior to the death of George Fear, when he surrendered a letter he received from his sister Margaret Fear McKenna, dated April 16, 1944. The letter is filed as an exhibit. The bill alleges that the appellant was duly appointed and made demands for the surrender of the property, but the defendants refused and claimed title thereto; that such claims of title are "spurious, pretended and fraudulent."

The letter filed as an exhibit reads as follows:

"April 16, 1944

Dear George & Fred:

I am very sorry to have to write this letter to you. I think you have done a great wrong having the dirty work of putting her out of her house done.

You have bitten the hand that befriended you. Do not try to get anything that does not belong to you. You,

Freddie and big Herb were the first to divide the furniture taking what you thought was the cream.

You took what pictures you wanted out of the whole lot and so did Freddie and Herb. I wanted to take Queen Anne and you said take Lord Colt and Let Mam have Queen Anne. You said Lord Colt was the best. I did not take any furniture or pictures for several weeks after you, Fred & Herb had taken yours. What Mary got you left for her and you were anxious for her to come & get it thinking it was rubbish. Lamie came & got a set of furniture which he said Etta wanted also oilcloth and organ. Bess bought the organ from him for $10.00. You will regret the dirty work you have done to her.

You & Fred took the most of all and sold it. Mary & Lee bought a lot of it from you & Fred.

(Signed)    Margaret."

"George! I bought Lima and Peru from you through Georgie for $10.00. I am swearing for her when the case comes up. You boys had the first chance of getting Queen Anne and you did not want it, thinking it was not worth anything. I was the only one there when you took what you wanted. You were not afraid of me. Herb took what he said Alma wanted. George, you took the large picture with the large horses on it Lima and also Peru & a small horse picture and you sold them to Mary. Fred, you took the large picture with the 3 women on it. The hay field & a small horse picture you sold them to Lee. Herb took Gabriel Clarke picture & Alma sold it to Mary."

The appellees contend, in support of the chancellor's order, (1) that equity has no jurisdiction (a) because there is an adequate remedy at law and (b) because there is a misjoinder of parties and causes of action, and (2) that the suit is barred by limitations and laches.

1. We think the first contention is untenable on several grounds. It is a general rule that equity will "enforce the surrender and delivery of chattels in specie, which have been tortiously obtained or are wrongfully detained," where they consist of heirlooms, paintings or

other works of art having a sentimental or unique value, or having no ready market value. *Pomeroy, Spec. Perf.* (3d ed.) Sec. 12; *Burr v. Bloomsburg,* 101 N. J. Eq. 615, 138 A. 876. In Maryland, this rule has been extended to notes and other securities. *Scarborough v. Scotten,* 69 Md. 137, 14 A. 704, 9 Am. St. Rep. 409; *Safe Deposit & Trust Co. v. Coyle,* 133 Md. 343, 105 A. 308; *McIntyre v. Smith,* 154 Md. 660, 141 A. 405. But see *Farmer v. O'Carroll,* 162 Md. 431, 160 A. 12, and note 4 *Md. L. R.* 431; *Sykes v. Hughes,* 182 Md. 396, 35 A. 2d 132, 150 A. L. R. 87. Whether Equity will assume a concurrent jurisdiction may depend upon the balance of convenience in a particular case. 4 *Restatement, Torts,* Sec. 946. Important considerations, in the recovery of assets of any type, may be the necessity for a discovery, the sufficiency of allegations as to fraud or collusion, and the possibility of avoiding a multiplicity of suits. Compare, *Boland v. Ash,* 145 Md. 465, 477, 125 A. 801; *Turk v. Grossman,* 176 Md. 644, 667, 6 A. 2d 639. In the case at bar, we think the legal remedy would be inadequate or incomplete, and that the equity jurisdiction is properly invoked to bring about a recovery and redistribution of the assets in a more expeditious and convenient manner. While the bill alleges that the appellees claimed title, and thereby ousted the jurisdiction of the Orphans' Court (*Talbot Packing Corporation v. Wheatley,* 172 Md. 365, 372, 190 A. 833; compare *Linthicum v. Polk,* 93 Md. 84, 92, 48 A. 842), the bill also alleges that the claim is spurious. Accepting the allegations as true, these parties participated in an illegal and irregular division of the assets, which had the effect of excluding persons rightfully entitled to a share. The bill raises questions that are common to all of the participants in the alleged wrongful acts, and calls for an answer.

2. A more serious question is presented by the claim of limitations and laches. The youngest of the three children of Boston Fear, Jr., was born on December 8, 1904, and was thus over thirteen years of age when the intestate died on April 11, 1918, and became 21 years of age on December 8, 1925. Yet this child, and his two

older brothers, took no action for a period of more than twenty years thereafter, to compel the administrator to file an inventory, or to recover assets of the estate. Recognizing this difficulty, the bill in effect alleges collusion between the participants in the wrongful division to conceal the truth until the letter, quoted above, came to light. The appellant relies upon Sec. 14 of Art. 57 of the Code, which provides that where a party has been kept in ignorance by the fraud of the adverse party "the right to bring suit shall be deemed to have first accrued at the time at which such fraud shall or with usual or ordinary diligence might have been known or discovered."

In commenting upon this section, in *Reeder v. Lanahan,* 111 Md. 372, 384, 74 A. 575, 579, it was said, quoting *Wear v. Skinner,* 46 Md. 257, 265, 24 Am. Rep. 517, that "the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party." The rule in Maryland is that where the original fraud is concealed, or is of such character as to conceal itself, no distinct or independent concealment or misrepresentation need be shown. The only requirement is that the injured party remain "in ignorance without any fault or want of diligence on his part." Compare *Schuck v. Bramble,* 122 Md. 411, 89 A. 719; 4 *Restatement, Torts,* Secs. 899e, and 939d; *Restatement, Restitution,* Sec. 148.

There is no doubt that limitations will apply by analogy, to proceedings in equity as well as to actions at law, particularly where the jurisdiction is concurrent. *Grandberg v. Barnard,* 184 Md. 608, 42 A. 2d 118, and cases there cited; *Story, Equity Jurisprudence* (14th ed.), Sec. 1974; 2 *Pomeroy, Equity Jurisprudence* (5th ed.), Sec. 419E. It is also established that the defense may be raised on demurrer. *Biays v. Roberts,* 68 Md. 510, 13 A. 366. But the question here is whether the appellant might have discovered the fraud, by the exercise of due diligence. It is suggested that the infant children of the deceased child might have asked the Orphans' Court to

interrogate the administrator and compel him to proceed. However, the administrator never filed an inventory, and unless the infant children, after they became of age, had knowledge of the personal property in question and its value, which the bill in effect denies, they would have been lulled into inaction by the record in the Orphans' Court, and would have been justified in assuming that the administrator, their oldest uncle, representing all the heirs, had performed his duty. We cannot assume actual knowledge from the mere fact of the lapse of time. It may also be pointed out that these children are not, in fact, parties to this proceeding, and that there are other possible claims, such as for debts or taxes, that may be involved. The administrator *d. b. n.*, appointed under the provisions of Code, Art. 93, Sec. 74, has duties to perform so long as there are assets in existence that have not been administered. *Sydnor v. Graves,* 119 Md. 321, 86 A. 341; compare *Lawson v. Burgee,* 121 Md. 203, 207, 88 A. 121.

The appellees rely upon the case of *Syester v. Brewer,* 27 Md. 288. In that case the court, after a lapse of more than twenty years, refused to set aside a deed alleged to have been made in fraud of creditors, but it was conceded that the creditors had actual notice of the deed, yet took no action. The case is readily distinguishable.

As to the charge of laches, we find nothing in the bill to indicate such a change of position as would raise an estoppel. *Spangler v. Dan A. Sprosty Bag Co.,* 183 Md. 166, 36 A. 2d 685; *Croyle v. Croyle,* 184 Md. 126, 135, 40 A. 2d 374. It is true that two of the participants in the alleged wrongful distribution have died, but the bill alleges that their shares were turned over to the appellees for nominal considerations. Whatever difficulties there may be in the way of proof would seem to operate most strongly against the appellant.

We think that the bill calls for an answer, and that the chancellor erred in sustaining the demurrers.

> *Order reversed and case remanded, with costs.*